UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 20-139 |
| VERSUS | SECTION "A" (3) |
| NICOLE E. BURDETT | JUDGE JAY C. ZAINEY |

### MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER

The government's decision to indict Ms. Burdett separately, rather than supersede in Case No. 20-55, constitutes improper forum-shopping within this District in a transparent effort to have the case allotted to a judge other than Judge Feldman, who has heard pretrial motions in Case No. 20-55 and presided over an evidentiary hearing involving the government's intent to charge Ms. Burdett and to retaliate against Ms. Burdett for filing pretrial motions. Judge Feldman has presided over Case No. 20-55 for six months now, and the facts at issue in both indictments are for the same conduct, over the same time period, and involve the same tax preparer. Allowing the case to remain in Section A would additionally require Ms. Burdett to litigate common issues of law and fact in two different sections in parallel, and risk inconsistent rulings between the sections. Because Ms. Burdett will be appointed counsel via the CJA panel[1] for Case No. 20-139, the cost of litigating matters in parallel will be unfairly borne by the public.

There is no rule of criminal procedure concerning transfers to remedy prosecutorial intradistrict forum-shopping, or to transfer in the interest of judicial economy. When there is no controlling rule, a "judge may regulate practice in any manner consistent with federal law, these rules [of criminal procedure], and the local rules of the district." *See* Fed. R. Crim. Pro. 57(b).

---

[1] Undersigned counsel will accept the appointment.

Ms. Burdett asks the Court to exercise its discretion to transfer this second indictment, Case No. 20-139, from Section A to Section F, to follow the indictment in Case No. 20-55 that is already pending against her in that section—for the same conduct, the same tax preparer, and the same witnesses, over the same time period.

1. **Ms. Burdett was made a target "in the Jason Williams investigation" in December 2019.**

The problems with government's investigation targeting Jason Williams—a sitting City Councilman and declared candidate for District Attorney whose successful runoff election was the *day after* the government chose to return an indictment against Ms. Burdett—has been fully briefed in Case No. 20-55, in which Ms. Burdett was also charged. Ms. Burdett was formerly Mr. Williams' legal secretary; after she completed law school in 2008, she joined his firm as an attorney and is now his law partner.

The government reached Ms. Burdett through a convoluted and troubling path. *See* Exh. 1, Transcript of Evidentiary Hearing; Exh. 2, Motion to Dismiss for Vindictive and Selective Prosecution; Exh. 3, Reply in Support of Motion to Dismiss; Exh. 4, Sur-Reply in Support of Motion to Dismiss; Exh. 5, Supplemental Memo in Support of Motion to Dismiss; Exh. 6, Renewed Memo in Support of Motion to Dismiss.

In 2013, the government began investigating a woman named C.D., whom it suspected of Medicaid fraud. C.D.'s tax preparer was a man named Henry Timothy. Timothy became a target of a criminal investigation both for the manner in which he prepared C.D.'s tax returns, which included taking deductions for business expenses on C.D.'s Schedule C's that were not allowable and which offset almost the entirety of her income, and for failing to report his own income from preparing the tax returns for hundreds of clients.

The IRS case agents targeting Timothy generated and reviewed a spreadsheet of Timothy's clients and began contacting witnesses to interview. These case agents pulled Mr. Williams' individual tax returns, reviewed them and saw what appeared to be errors on his Schedule Cs, and attempted to interview him as a *witness*—not a subject or target—in the Timothy investigation. Their initial contact with Mr. Williams was at his house as he was preparing to go to court where he was representing a client in trial, so they rescheduled to meet at Mr. Williams' law office. While there, the agents realized that Mr. Williams was a New Orleans public official. They notified their supervising agent, Kristie Gregoire, that they had contacted a public official. Gregoire immediately—and without having reviewed Mr. Williams' returns or learning of any new evidence—referred Mr. Williams to IRS S/A Timothy Moore and made Mr. Williams the target of the investigation.

During its investigation targeting Mr. Williams, Ms. Burdett's counsel made an attorney proffer in November 2019 of what her testimony would be: that Timothy was a friend of the family and prepared her tax returns from when she graduated law school until 2018, when a financial advisor suggested that she change preparers; that Timothy held himself out to her as a CPA[2]; that she introduced Mr. Williams to Timothy; that Ms. Burdett delivered complete Quickbooks reports and credit card statements for the law firm to Timothy and that Timothy selected which of the expenses could properly be deducted; Timothy did not prepare draft returns; and that she and Mr. Williams signed their returns when they were done.

---

[2] Ms. Burdett learned when she consulted a financial advisor in 2019 that Timothy was not a CPA.

This testimony contradicts the government's misguided theory of the case. As a result, the prosecutor notified Ms. Burdett's counsel that she would become a target in "this matter," which the prosecutor described as "the Jason Williams investigation":

December 2, 2019

> As you will recall, I gave you a deadline of November 27, 2019, to let me know if your client would come in and provide a proffer to the government. We wanted to speak to her before making a decision as to whether or not we would proceed with her as a target in the Jason Williams investigation and wanted to give her the opportunity to cooperate in order to lessen her culpability and possibly avoid being charged. In addition, as I mentioned to you, I can only obtain her personal tax returns, once a case is officially opened on her. Once the case is open and her returns are obtained, she could possibly face additional criminal as well as civil exposure.

*See* Exh. 7, Government's Sur-Reply to Motion to Dismiss, at 78-1.

December 4, 2019

> This letter will confirm our conversation yesterday during which you told me that you recommended to your client that she not come in and speak to the Government, even though we offered her use immunity and the possibility of prosecutorial immunity. Since she has declined our offer, we have added her to this matter as a target and have requested her personal tax returns, thus exposing her to potential criminal and civil liability.

*See* Exh. 7, Government's Sur-Reply to Motion to Dismiss, at 78-2.

2. **The government indicted Ms. Burdett and Mr. Williams as co-defendants and the case was allotted to Judge Feldman.**

The government did, in fact, make Ms. Burdett a target in "the Jason Williams investigation" and indicted her on June 26, 2020. Ms. Burdett and Mr. Williams were charged in

connection with Mr. Williams' personal tax returns prepared by Henry Timothy—a person who falsely held himself out to Ms. Burdett and Mr. Williams as a CPA, who admitted to deciding on his own what expenses to include on Mr. Williams' Schedule Cs, and who himself became the target of a federal investigation stemming from errors on another client's returns and from failing to report his own income—for the years 2014-2018.  *See* Exh. 8, Indictment, Case No. 20-55, Sect. F (the "Section F Indictment").

Timothy prepared Ms. Burdett's personal returns for the same years charged in the Section F Indictment.  The government chose not to indict Ms. Burdett in connection with her personal returns; instead, it relied upon a theory that Ms. Burdett conspired with Mr. Williams to falsify Mr. Williams' returns.

The case was allotted to Judge Feldman, and defense counsel have litigated significant pretrial motions, including a pending Motion to Dismiss for Selective and Vindictive Prosecution, for which the Court held an evidentiary hearing and granted discovery of Timothy's grand jury testimony.  One of the issues raised in connection with that pending Motion is the government's threat to indict Ms. Burdett separately—a threat that the government made in retaliation for Ms. Burdett's pretrial motions.

3. **The government decided to indict Ms. Burdett separately in retaliation for her filing of pretrial motions, and in an attempt to forum-shop the case away from Judge Feldman.**

The government's decision not to indict Ms. Burdett changed after Ms. Burdett and Mr. Williams filed two separate motions to dismiss the Section F Indictment.  *The same day* that Mr. Williams and Ms. Burdett filed their Motion to Dismiss for Selective and Vindictive Prosecution, the government threatened to bring additional charges against Ms. Burdett related to her personal tax returns—which Timothy prepared in the same manner he did for every one of his hundreds of

clients to whom he falsely claimed to be a CPA and whose Schedule Cs are rife with errors of his creation. That day, the government mailed discovery that for the first time focused on Ms. Burdett, including an IRS Report authored by IRS case agent S/A Moore recommending charges against Ms. Burdett for the same tax years covered by the Section F Indictment. S/A Moore did not draft this IRS Report until *after* Ms. Burdett and Mr. Williams were already charged in Section F—even though there are no additional or new factual allegations or tax years identified in the report beyond those already encompassed in the Section F Indictment.

When the government filed its opposition to the Motion to Dismiss a week later, it made its threat explicit: Ms. Burdett "is also being investigated for criminal prosecution and . . . she herself was a Timothy client, . . . her own returns were prepared by Timothy, and . . . her own returns likewise contained substantial and improper Schedule C deductions." *See* Exh 9, Supplemental Opposition and Incorporated Memorandum in Support of Opposition to Defendants' Motion to Dismiss for Selective and Vindictive Prosecution, Doc. 61, at 8-9. Making the retaliatory purpose of this new discovery crystal clear, the government argued that its new investigation of Ms. Burdett for old tax returns defeated the selective prosecution motion. *See* Exh. 9, Doc. 61 at 8-9. But government is prohibited from retaliating against a defendant by threatening or bringing additional charges out of a desire to prevent the defendant's exercise of her constitutional rights. *United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984).

Judge Feldman granted oral argument on Ms. Burdett and Mr. Williams' Motion to Dismiss for Vindictive and Selective Prosecution. *The morning of the oral argument*, the government sent its case agent S/A Moore to the homes of Ms. Burdett's brother and sister-in-law, and Ms. Burdett's daughter and daughter's fiancé—timing and circumstances that strongly suggest that the government intended to intimidate Ms. Burdett and future retaliate against her

for filing pretrial motions. *See* Exh. 4, Doc. 77. During the oral argument, the government made clear its intent to indict Ms. Burdett not by superseding the Section F Indictment, but to do so as a "separate matter." *See* Exh. 10, Doc. 80 at 22:4-23:2 (variously describing its agent's attempts to serve grand jury subpoenas, which it characterized as a Rule "6(e) matter," upon Ms. Burdett's family members as for "a separate matter" or "another matter").

Comparing the Indictment returned and allotted to Section A against the Section F Indictment makes clear that they are not "separate matter[s]": they both encompass tax years 2014-2017 and Schedule Cs that were prepared by tax preparer Henry Timothy from the law firm's Quickbooks reports.

Instead, the government changed its position from December 2019, when it indicated that Ms. Burdett would be made a target in "the Jason Williams investigation," to December 2020, which it indicted Ms. Burdett in "a separate matter," in retaliation for Ms. Burdett filing pretrial motions and in an attempt to forum-shop the case away from Judge Feldman, who granted the defendants pretrial discovery on both of their motions to dismiss, an evidentiary hearing on one of their motions to dismiss, and who still has the Motion to Dismiss for Vindictive and Selective Prosecution—which is based, in part, upon the government's retaliatory charging of Ms. Burdett in this second indictment—under consideration.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *United States v. Goodwin*, 457 U.S. 368, 372 (1982). A prosecutor "may not increase the charge against a defendant solely as a penalty for invoking a right," such as filing a pleading seeking dismissal. *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Vindictiveness must be established by a preponderance and may be established in one of two ways: by proving actual vindictiveness by presenting evidence that "a prosecutor's

actions were designed to punish a defendant for asserting his legal rights," or by showing "sufficient facts to give rise to a presumption of vindictiveness." *Id.*  To determine if the presumption applies, the Court "must examine the prosecutor's actions in the context of the entire proceedings" to determine whether a "reasonable" person would view the prosecutor's conduct as "motivated by some purpose other than a vindictive desire to deter or punish" a defendant's exercise of her constitutional rights.  *Id.* at 360.  If there is "actual vindictiveness" or a "realistic likelihood of vindictiveness," the Court is within its discretion to dismiss the indictment.  *United States v. Moon*, 413 F.3d 527, 535 (6th Cir. 2008).  The government in fact *admitted* in its briefing before Judge Feldman that its conduct is the type that gives rise to vindictiveness motions: such claims "usually arise after charges are pursued, or additional charges are pursued after the defendant exercises a protected legal right."  *See* Exh. 9, Doc. 61 at 13.  The government's conduct after the filing of the motions to dismiss gives rise to a presumption of vindictiveness, and Case No. 20-139 should be transferred from Section A to Section F for further proceedings.

4. **The government does not have a plausible explanation for charging Ms. Burdett separately.**

The government has not offered a plausible explanation for its decision to charge Ms. Burdett separately for her personal tax returns prepared by Henry Timothy for the years she is already charged with conspiring with Mr. Williams for Timothy to prepare Mr. Williams' individual tax returns.  When confronted with its retaliatory and forum-shopping intent, the government attempted to change history, claiming that its December 2019 letters indicating that Ms. Burdett would be made "a target in the Jason Williams investigation" and that the government would "obtain her personal tax returns" by virtue of her being a target in "this matter," *see* Exh 7, Government's Sur-Reply to Motion to Dismiss, at Doc. 78-1 and 78-2, means

that it has always intended to indict Ms. Burdett separately for her personal returns. *See* Exh. 7, Government's Sur-Reply to Motion to Dismiss, Doc. 78 at 3-4. That is simply not true. The December 2019 letters to Ms. Burdett say what they say, and all of the facts that are contained in S/A Moore's IRS report recommending that Ms. Burdett be charged were known to the government *before* it presented the Section F Indictment in which Ms. Burdett and Mr. Williams were charged as co-defendants.

The government lamely offers that it chose to indict Ms. Burdett separately because it would be accused of "piling on" if it were to instead supersede the Section F Indictment to charge Ms. Burdett for her personal tax returns prepared by *the same tax preparer* for *the same years* already charged:

> As stated above, there are no other charges at this time pending against Burdett. If a second indictment is returned, the Government has no say regarding which judge will be assigned to that case, so it is inappropriate to accuse the Government of forum shopping. If the Government were to supersede the instant indictment, it would certainly be subjected to a motion to sever and the Government would likely be accused of "piling on."

*See* Exh. 7, Government's Sur-Reply to Motion to Dismiss, Doc. 78 at 4. The government's position is belied by the operation of the Sentencing Guidelines which—if there were a conviction—would group the charged offenses by operation of U.S.S.G. §3D1.2. Rather than be accused of "piling on," the government has decided to double the costs and legal expenses for Ms. Burdett and to burden two different sections of Court with what is truly a single case.

The government's claim that it was not forum-shopping *away* from Judge Feldman because it does not have control over where the new indictment is allotted is intentionally obtuse: a new indictment had a 92.3% chance of being allotted to a judge *other than* Judge Feldman.[3]

Ms. Burdett has been prejudiced by having her second indictment allotted away from Judge Feldman because the government's threats to indict her separately are already the subject of a dispositive motion that is pending before Judge Feldman.  If the charges against her survive the pretrial constitutional motions to dismiss, she will be forced to prepare two cases—involving the same facts and legal issues—in parallel, before two different judges, and risk receiving inconsistent pretrial rulings on those common issues of fact and law.

There are two legal standards implicated when the government attempts to forum-shop within a district.  First, the government cannot forum-shop within a district when doing so would be prejudicial to the defendant.  *United States v. Osum*, 943 F.2d 1324, 1399 (5th Cir. 1991).  Nor can the prosecutor do so when she was "motivated by considerations other than [her] assessment of the public interest," or "acted in bad faith."  *United States v. Williams*, 809 F.2d 1072, 1083 (5th Cir. 1987).  A section of this Court recently applied both standards when evaluating the government's dismissal of indictments against multiple individuals pending in different sections to then supersede and consolidate in a single section of court.  *United States v. Alexander*, 2016 U.S. Dist. LEXIS 151839, at *2 (E.D. La. Nov. 2, 2016).  In *Alexander*, the Court analyzed both whether the government "offered a plausible explanation for acting as it did" and whether the defendant "suffered [any] prejudice" from the government's conduct.  *Id.*

---

[3] Because Judge Vance's husband is law partners with undersigned counsel, she recuses herself from matters in which Jones Walker represents a party, which leaves 13 judges to whom this indictment could have been allotted.

The Southern District of New York case *United States v. Carrasco* is instructive for evaluating the plausibility of the government's justification for acting as it did, and the resulting prejudice to the defendant. 968 F.Supp. 948, 951 (S.D.N.Y. 1997). The Court started from the proposition that it "is not appropriate for the Government to use the grand jury as a tool for making strategic decisions at the expense of defendant's rights." *Id*. In *Carrasco*, the government indicted a defendant twice for essentially the same conduct, and then dismissed the first indictment to proceed on the second. The Court noted that the government's conduct "does not emit a pleasant odor," and expressed concerns about "forum-shopping problems" even in the absence of any "discernable improper [government] motive." *Id.* Of concern to the Court was that, as here, "the Government was aware of all the evidence against [the defendant] when it chose to indict him" the first time. *Id.* "Nothing changed" between the first and second indictment "except the selection of the trial judges on both cases." *Id.* The Court granted the defendant's requested remedy of severance from the co-defendants that were added in the second indictment. *Id.*

The government's proffered justification—that it would be "accused" by the defense of "piling on" if it superseded—is not plausible, and does not shield the government's retaliatory forum-shopping from judicial remedy.

**5. Judicial economy favors transferring Case No. 20-139 from Section A to Section F, in order to follow Case No. 20-055.**

Judge Feldman has pending before him a Motion to Dismiss for Vindictive and Selective Prosecution that is based, in part, upon the government's threat to charge Ms. Burdett in an indictment allotted to a separate section of court. Judge Feldman has presided over an evidentiary hearing in which four government agents were questioned regarding their decision-making to initiate this prosecution. Judge Feldman has questioned the prosecutor about her

agents' actions in attempting to serve grand jury subpoenas upon Ms. Burdett's family members the morning of an oral argument.

Going forward, pretrial motions practice regarding the Section F Indictment will ask Judge Feldman to rule upon common issues of law and fact that are also implicated by the Section A Indictment—which covers the same years of individual tax returns, prepared by Henry Timothy, that are charged in the Section F Indictment. Allowing the cases to be heard by separate courts risks inconsistent rulings between sections and requires Ms. Burdett to litigate in two parallel tracks. And in a case where Ms. Burdett will be eligible for appointed CJA Counsel for the Section A Indictment, this additional cost will be unfairly borne by the public.

*       *       *

For these reasons, Ms. Burdett respectfully requests that the Court transfer Case No. 20-139 from Section A to Section F, in order to follow Case No. 20-55.

Respectfully submitted,

*s/Avery B. Pardee*
MICHAEL W. MAGNER (#1206)
AVERY B. PARDEE (#31280)
Jones Walker LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170
Telephone (504) 582-8316
apardee@joneswalker.com
mmagner@joneswalker.com
*Attorneys for Nicole E. Burdett*

## CERTIFICATE OF SERVICE

I certify that on December 8, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System, which will send a copy of the pleading to all parties via email.

/s/ Avery B. Pardee