UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

v.                                          NO. 20-139

NICOLE BURDETT                              SECTION "F"


ORDER AND REASONS

New Orleans District Attorney Jason Williams and his former law partner, Nicole Burdett, will stand trial on November 1, 2021 on 11 federal criminal charges including tax fraud relative to the preparation of Jason William's personal income tax returns as well as failing to file forms to report cash payments exceeding $10,000 for legal services provided by his former law firm, Jason Rogers Williams & Associates.  When Ms. Burdett refused to cooperate with the government against Mr. Williams, the government carried through on its threat to indict her on fraud charges relating to her own personal tax returns for the same tax years.  She now wants to join the cases for trial.  Before the Court is Nicole Burdett's Rule 13 motion for joint trial of separate cases.  For the reasons that follow, the motion is GRANTED.

**Background**

On June 26, 2020, a specially-convened federal grand jury returned an 11-count indictment, charging Jason R. Williams and Nicole E. Burdett with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); five counts of aiding and assisting in the preparation and presentation of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2) (Counts 2, 3, 4, 5, and 6);[1] and five counts of failing to file IRS Forms 8300 relating to cash received in trade or business, in violation of 31 U.S.C. §§ 5331 and 5322 (Counts 7, 8, 9, 10, and 11).[2] The conspiracy and fraudulent tax return charges concern Jason Williams' individual personal income tax returns. The conspiracy count alludes not just to Jason Williams and Nicole Burdett, but also to co-conspirators -- "and others, both known and unknown to the Grand Jury" -- whom all assisted in falsifying

---

[1] Each charged § 7206(2) violation concerns allegedly inflated Schedule C business expenses in the amount of: $200,000 (tax year 2013; Count 2); $90,000 (tax year 2014; Count 3); $170,000 (tax year 2015; Count 4); $140,000 (tax year 2016; Count 5); $120,000 (tax year 2017; Count 6). The government alleges that the defendants misclassified Jason Williams' personal expenses as business expenses and provided this false information to tax preparer, Henry Timothy, for inclusion on the Schedule C (profit and loss from a business) portion of Williams' tax returns; and that these allegedly fraudulent tax returns reduced Williams' tax liability in excess of $200,000.
[2] Each charged §§ 5331 and 5322 violation concerns an occasion in which Mr. Williams and Ms. Burdett allegedly failed to report cash payments in excess of $10,000 from clients for legal services; five occasions between June 2017 and August 2018, for a total of $66,516.

Jason Williams' tax returns for the years 2013 through 2017 by falsely and fraudulently overstating Schedule C (Profit and Loss from a Business) expenses.  It is now well known that convicted felon Henry Timothy, the tax preparer for both Jason Williams and Nicole Burdett, is a co-conspirator referenced in the indictment.

The indictment in Criminal Action Number 20-55 was returned while Mr. Williams was a city councilman campaigning to be Orleans Parish District Attorney; the office he now holds.  As for the conspiracy and preparation of fraudulent tax returns charges, Mr. Williams and Ms. Burdett contend that they were improperly singled out from hundreds of other clients of their tax preparer, convicted felon Henry Timothy, whom they relied upon to determine which law firm expenses should be deducted on Jason Williams' tax returns for the charged tax years.[3]

This Order and Reasons assumes familiarity with prior motion practice, proceedings, and Orders and Reasons.  After granting the defendants' request for limited discovery on their selective and vindictive prosecution theories (but denying without prejudice dismissal of the indictment), an evidentiary hearing was conducted on October 22, 2020.  Four government agents along with a defense

---

[3] As for the Title 31 charges, Mr. Williams and Ms. Burdett are the only individuals to be charged with failing to file a Form 8300 in the Eastern District of Louisiana at least in the past 50 years.

expert Certified Public Accountant testified, and documentary evidence was submitted by all parties.  After the hearing, Mr. Williams and Ms. Burdette renewed their motions to dismiss the indictment.  One of the many theories of vindictive prosecution predicating the defendants' motion was Ms. Burdett's claim that the government was harassing her family members and threatening to indict her separately as it actively investigated her for alleged fraudulent personal tax returns, which (like Mr. Williams' returns) Henry Timothy prepared.  With the same IRS special agent leading the investigation and relying on Mr. Timothy as a cooperating witness, the government opted to pursue a case against Ms. Burdett after she declined the government's request that she agree to cooperate against Mr. Williams in Criminal Action Number 20-55.

Meanwhile, on December 5, 2020, Jason Williams was elected District Attorney; the day prior to the run-off election, on December 4, 2020, Nicole Burdett was separately indicted on four counts of making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1), concerning her personal tax returns.[4]

---

[4] Each charged § 7206(1) violation concerns a particular tax year's Form 1040 tax return that was allegedly false and fraudulent insofar as Nicole Burdett filed as Head of Household, even though she was married at the time, and the tax return allegedly contained false and fraudulent Schedule C business expenses exceeding a certain amount, causing Nicole Burdett to qualify for the Earned Income Tax Credit:  Count 1 relates to tax year 2014 and allegedly false Schedule C expenses exceeding $50,000; Count 2 relates to

Criminal Action Number 20-139 was randomly allotted to another Section of Court, which granted Ms. Burdett's motion to transfer the case to this Section of Court given the relatedness of pretrial issues presented in the cases and to prevent duplication of pretrial proceedings and inconsistent rulings.[5]

And, thus, Nicole Burdett faces two trials for tax fraud. The later-indicted case, Criminal Action Number 20-139, is presently scheduled for a May 24, 2021 jury trial and concerns her personal tax returns for the same tax years, save 2013, as those charged in Criminal Action Number 20-55 (relating to Jason Williams' personal tax returns for which she and Mr. Williams are both charged).[6]  There is no dispute that the separate, later indictment was returned as a result of the investigation into Jason

---

tax year 2015 and allegedly false Schedule C expenses exceeding $70,000; Count 3 relates to tax year 2016 and allegedly false Schedule C expenses exceeding $100,000; Count 4 relates to tax year 2017 and allegedly false Schedule C expenses exceeding $60,000.

[5] In between the June 2020 indictment and Ms. Burdett's December 2020 indictment, on September 22, 2020, the government filed a bill of information charging Williams' and Burdett's former tax preparer, Henry Timothy, with four counts of willfully making a false tax return, in violation of 26 U.S.C. § 7206(1), related to falsifying his own Schedule C gross receipts, Criminal Action Number 20-99.  On January 7, 2021, Henry Timothy pled guilty to one count of filing a false tax return for tax year 2013.  Timothy's credibility and the extent of his cooperation with federal prosecutors will surely be powerfully placed at issue at the trial of his former tax return clients.

[6] Meanwhile, on January 8, 2021, the Court denied the defendants' renewed motions to dismiss the indictment for selective and vindictive prosecution.

Williams and Nicole Burdett and, specifically, as a result of her
refusal to cooperate against her former law partner.  The theory
of the government's case in Criminal Action Number 20-139 is that
Nicole Burdett worked with tax preparer Henry Timothy to accomplish
the same tax evasion objectives for herself that she, Jason
Williams, and Henry Timothy allegedly performed for Mr. Williams.[7]
Claiming that the cases could have been properly joined under the
Federal Rules of Criminal Procedure, Ms. Burdett now requests that
the Court order that the cases be tried together.

I.

Nicole Burdett requests an order that the charges contained
in separate tax fraud indictments (in Criminal Action Numbers 20-
55 and 20-139) filed against her be tried together as though
brought in a single indictment.  Her co-defendant in Criminal
Action Number 20-55, Jason Williams, who is not charged or
implicated in the indictment contained in Criminal Action Number

---

[7] Both indictments charge that Nicole Burdett assisted or submitted
false and fraudulent Schedule C expenses; the indictment in which
she is joined with Jason Williams involves Williams' income tax
returns and the more recent indictment solely charging Nicole
Burdett concerns her income tax returns.  With convicted felon
Henry Timothy as the common denominator.  In the government's
theory of investigation, Ms. Burdett is alleged to be the go-
between for Mr. Williams and Mr. Timothy and, also during the same
time period, she is alleged to have dealt directly with Mr. Timothy
concerning preparation of her own returns.

20-139, does not oppose Ms. Burdett's motion.  But the government does.

The threshold and principal issue presented is whether the indictments could have been initially joined in a single indictment under the Federal Criminal Rules.  If not, then the cases *cannot* be consolidated for trial.  If they could have been joined, then the Court *may* order that the cases be jointly tried after balancing the efficiency and convenience of doing so with the risks of prejudice to any party, particularly any defendant.

*A.*

"The Court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information."  Fed. R. Crim. P. 13.  Rule 13's criminal trial consolidation provision has two components: one legal (whether joinder under Rule 8 would be proper as a matter of law) and one discretionary (if joinder is substantively proper, whether the efficiencies and benefits of consolidation are outweighed by potential prejudice under Rule 14).[8]

---

[8] See United States v. Park, 531 F.2d 754, 760 (5th Cir. 1976)(describing presentment of "a simultaneous hurdle of three obstacles" when a trial court considers consolidating separate indictments for trial: first, that the offenses and defendants could have been joined in a single indictment (Rule 13); second, that the test for the relevant subsection of Rule 8 is satisfied

7

Where the objectives of these rules -- to promote economy, to maximize efficiency, and to avoid multiplicity of trials that may create the inequity of inconsistent verdicts -- can be achieved without substantial prejudice to the right of defendants to a fair trial, Rules 8 and 13 should be construed broadly in favor of joinder. See, e.g., United States v. Bullock, 71 F.3d 171, 174 (5th Cir. 1995)("Joinder of charges is the rule rather than the exception.").[9]  To be sure:

> There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials "play a vital role in the criminal justice system."  They promote efficiency and "serve the interests of justice by avoiding the scandal and inequality of inconsistent verdicts."

Zafiro v. United States, 506 U.S. 534, 537 (1993)(internal citations omitted).[10]

---

(Rule 8); and "[t]he third obstacle ... that the joinder must not prejudice the defense, Rule 14.").

[9] See also United States v. Butler, 429 F.3d 140, 146-47 (5th Cir. 2005)(citation omitted)("we broadly construe Rule 8 in favor of initial joinder"); United States v. Patterson, 140 F.3d 767, 774 (8th Cir. 1998)(instructing that the provisions of Rule 8(b) should be construed broadly in favor of joinder and "rarely, if ever, will it be improper for co-conspirators to be tried together."); Daley v. United States, 231 F.2d 123, 125 (1st Cir. 1956)("Rules 13 and 8(b) are not to be read...narrowly.").

[10] Although the rules should be applied to maximize efficiencies, avoiding and minimizing the potential for prejudice remains paramount. See 1A Charles Alan Wright, et al., Fed. Prac. & Proce. Crim. § 142 (5th ed. 2020)("courts should be cautious in evaluating joined cases to ensure that a defendant who is presumptively innocent is not given less than a fully fair trial simply to serve administrative concerns.").

*B.*

To determine whether the charges in Criminal Action Number 20-139 "could have been" joined with the charges in Criminal Action Number 20-55, as required by Rule 13, the Court must as a threshold matter apply Rule 8:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged whether felonies or misdemeanors or both are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Where, as here, cases involve both multiple defendants and multiple counts, Rule 8(b) is the singular relevant test for joinder; 8(a) has no application.  See United States v. Kaufman, 858 F.2d 994, 1003 (5th Cir. 1988).

Rule 8(b) articulates a more restrictive test; unlike Rule 8(a), Rule 8(b) "does not permit joinder of defendants solely on the ground that the offenses charged are of 'the same or similar character.'"  United States v. Turoff, 853 F.2d 1037, 1042-43 (2d Cir. 1988); United States v. Mackins, 315 F.3d 399, 412 (4th Cir. 2003)(Rule 8(a) requirements for joinder are slightly broader than

those for joinder in Rule 8(b), but "neither set of requirements is onerous" and "both permit 'very broad joinder[.]'"). In other words, "[a] 'series' of acts under Rule 8(b) ... is something more than 'similar' acts [under Rule 8(a)]." United States v. Marionneaux, 514 F.2d 1244, 1248 (5th Cir. 1975), *overruled in part on other grounds by* United States v. Lane, 474 U.S. 438 (1986)(effectively overruling cases holding or implying that misjoinder under Rule 8 is inherently prejudicial); United States v. Gooch, 665 F.3d 1318, 1325 (D.C. Cir. 2012)("in the multiple defendant context, Rule 8(b) forbids joinder, even of identical crimes, unless those crimes are part of 'the same series of acts or transactions.'").

Even so, district courts are cautioned against "rigid" or "hypercritical" application of the Rule and instead instructed to apply it "flexibly" and with "commonsense." See, e.g., United States v. Butler, 429 F.3d 140, 146-47 (5th Cir. 2005)("This Circuit has ... recognized that the transaction requirement in Rule 8 is flexible, holding that such a transaction "'may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship[;]'" and applying the broader Rule 8(a) test to hold that the superseding indictment "creates an overlap that logically intertwines" two sets of different charges); United States v. Rittweger, 524 F.3d 171 (2d Cir. 2008)(Sotomayor, J.)(rejecting

defendant's argument that as members of two distinct conspiracies they should not have been joined in the same trial; and instructing that Rule 8(b)'s text does not support "a rigid application" and should be applied with "commonsense"); <u>Daley</u>, 231 F.2d at 125 (the joinder rules should not be read "narrowly" or "hypercritical[ly]").

How do courts interpret the "same series of acts or transactions" requirement of Rule 8(b)?  Somewhat inconsistently. A survey of the case literature indicates that, while courts uniformly hold that mere similarity or identity of offenses in multi-defendant cases will not suffice, the Rule 8(b) test may be met by: a common plan or scheme unifying the offenses;[11] substantial identity of facts or participants ("[t]he broadest definition of 'series'" which is embraced by the Fifth Circuit); or factual overlap among the charges that invites joint proof ("[a] pragmatic

_____

[11] Although the case literature insists that an overarching conspiracy charge is not required to unify similar offenses in multi-defendant cases sufficient to meet Rule 8(b), a conspiracy charge nonetheless routinely suffices to render joinder proper. See <u>United States v. Evans</u>, 753 Fed.Appx. 295, 296-97 (5th Cir. 2018)(unpublished)(initial joinder proper where indictment alleged that "Evans and Baker [who were patients of Washington, a licensed counselor] engaged in a scheme to receive kickbacks in exchange for filling out falsified medical documents that were used by co-conspirators to defraud the [Department of Labor].  Although Baker and Evans acted independently of each other and at different times, they were part of a common conspiracy to profit from defrauding the DOL by providing Washington [a licensed professional counselor] with false medical documentation for billing purposes.").

interpretation of 'series'"). See 1A Charles Alan Wright, et al., Fed. Prac. & Proc. Crim. § 145 (5th ed. 2020)(citations omitted).[12]

"Whether the counts of an indictment fulfill the 'same series' requirement is determined by examining the relatedness of the facts underlying each offense." United States v. Harrelson, 754 F.2d 1153, 1176 (5th Cir. 1985)(internal quotation marks omitted). "What is required," the Fifth Circuit has instructed, "is a series of acts unified by some 'substantial identity of facts or participants.'" United States v. Dennis, 645 F.2d 517, 520-21 (5th Cir. 1981), overruled in part on other grounds by United States v. Lane, 476 U.S. 438 (1986).[13] "As the plain language of Rule 8(b) provides," the Fifth Circuit has observed, "there is no requirement 'that each defendant have participated in the same act or acts.'" United States v. McRae, 702 F.3d 806, 820 (5th Cir.

---

[12] As some courts have explained, "a 'series' [might] exist[]" if "there is a 'logical relationship'" or nexus between transactions, see United States v. Vasquez-Velasco, 15 F.3d 833, 843 (9th Cir. 1994), and joinder is proper when the charged offenses are "unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." United States v. Stewart, 433 F.3d 273, 314 (2d Cir. 2006)(citation omitted).

[13] There, in Dennis, an overarching conspiracy charge linking defendants and offenses was absent; nevertheless, the Fifth Circuit determined that an indictment, which charged five defendants and six separate counts with no conspiratorial link, was properly joined because all of the charges involved the same scheme to defraud the same victim, over the same time period, and through the same "basic plan of selling to [the victim] equipment to which the defendants had either no control or no title."

2012)(quoting <u>United States v. Krenning</u>, 93 F.3d 1257, 1266 (5th

Cir. 1996)).  Rather, as summarized by the Fifth Circuit in <u>McRae</u>:

> All that is required... is a series of acts unified by
> some substantial identity of facts or participants.
> Whether the counts of an indictment fulfill the "same
> series" requirement is determined by examining the
> relatedness of the facts underlying each offense.  When
> the facts underlying each offense are so closely
> connected that proof of such facts is necessary to
> establish each offense, joinder of defendants and
> offenses is proper.  When there is no substantial
> identity of facts or participants between the two
> offenses, there is no 'series' of facts under Rule 8(b).

<u>McRae</u>, 702 F.3d at 820 (internal quotations and citations omitted).

To be sure, "Rule 8(b) on its face contemplates the situation

where some of the evidence might be admissible against one

defendant and not against a codefendant at a single trial[.]"  <u>See</u>

<u>Daley</u>, 231 F.2d at 125 (considering Rule 8(b)'s provision that

"All of the defendants need not be charged in the same count.");

<u>see also</u> <u>United States v. Azor</u>, 881 F.3d 1, 11 (1st Cir. 2017)(to

comply with Rule 8(b) it is not necessary that each defendant

participate in the same act or transaction and, while a conspiracy

charge may provide the link to render joinder proper, as the rule

plainly states, each defendant need not be charged with all crimes

for criminal matters to be properly joined).

In light of Rule 8(b)'s explicit concluding pronouncement

that "All defendants need not be charged in each count[,]" consider

13

the breadth of joinder of defendants permitted in "common thread" cases. "The litmus test for misjoined counts under Rule 8(b)," the Eleventh Circuit has observed, "is whether the acts described in the indictment are tied by a 'common thread' to each other or the participants." United States v. McLain, 823 F.2d 1457, 1467 (11th Cir. 1987), *overruled in part on other grounds as recognized by* United States v. Watson, 866 F.2d 381, 385 n.3 (11th Cir. 1989)(noting that the Supreme Court overruled McLain to the extent it implied that misjoinder under Rule 8 was inherently prejudicial). That is, some courts hold that joinder is proper under Rule 8(b) where defendants are charged with virtually identical schemes and the schemes are linked together by a common third party. See, e.g., United States v. Valentino, 436 Fed.Appx. 700, 706 (7th Cir. 2011)("A typical relationship justifying joinder is the defendants' mutual reliance on a common third party to link their individual, yet similar, schemes."); United States v. Askew, 203 Fed.Appx. 414, 418 (3d Cir. 2006) (unpublished) (holding that Rule 8(b) was not violated where "the Askew brothers robbed banks with a common actor[; t]he same method of operation was employed to rob the banks, and the banks were all robbed during a similar time frame. Their conduct thus formed a series of criminal activities involving a common actor, common methods, and a common time frame."); United States v. Greenleaf, 692 F.2d 182, 186-87 (1st Cir. 1982)("We cannot say that joinder of two

14

defendants alleged to have perpetrated, with a common third party,
almost identical mail fraud schemes to defraud a common enterprise
was plain error"); United States v. Cavale, 688 F.2d 1098, 1107
(7th Cir. 1982)("where multiple defendants are charged with
employing virtually identical schemes, and where all of these
fraudulent schemes are linked together by a common third
party...joinder is proper.").[14]

"Rule 8 accommodates [various interests such as conserving
resources, diminishing inconvenience, and avoiding trial delays]
while protecting against prejudicial joinder." See United States
v. Lane, 474 U.S. 438, 449 (1986). But prejudice does not
automatically inure "*whenever* its requirements have not been
satisfied." Id. (emphasis in original). If Rule 8 forbids
joinder, an objecting defendant must file a motion; because
objections to misjoinder are "objections based on defects in the
indictment" under Rule 12(b)(3)(B), a defendant who fails to object
to misjoinder prior to trial waives his or her objection pursuant
to Rule 12(e). See United States v. St. Martin, 119 Fed.Appx.
645, 648 (5th Cir. 2005)(unpublished)(citations omitted).

---

[14] This seemingly sweeping "common thread" doctrine has limits.
For its outer bounds, see United States v. Whitehead, 539 F.2d
1023, 1025 (4th Cir. 1976)(holding that joinder was impermissible
under Rule 8(b) where the only nexus between two defendants was
that they happened to live in the same apartment building and
(independently) participated in similar offenses (drug deals) on
different dates with a common third defendant).

If application of Rule 8 shows that joinder is proper, then the Court turns to consider the discretionary issue of whether joinder might prejudice a party.

*C.*

If joinder is proper under Rule 8(b), the Court must consider prejudice before granting a motion seeking a joint trial under Rule 13.   Rule 14 offers a severance remedy for prejudicial joinder:

> (a) Relief.  If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).  "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."  Zafiro, 506 U.S. at 538-39 (citation omitted).

Whereas the appropriateness of Rule 8 joinder is an issue of law for the Court, severance (or the assessment of prejudice) is left to the Court's discretion.  See United States v. Lane, 474 U.S. 438, 449 n.12 (1986).  The Fifth Circuit has described a defendant's claim that a district court committed reversible error in denying a request to sever as "fac[ing] a doubly high burden" because, firstly, the Fifth Circuit "review[s] the decision not to

16

sever 'under the exceedingly deferential abuse of discretion standard" and, secondly, the case literature "does not reflect a 'liberal attitude toward severance.'"   See United States v. Ledezma-Cepeda, 894 F.3d 686, 690 (5th Cir. 2018)(citations omitted). There, the Fifth Circuit rejected a defendant's argument that the jury likely considered the voluminous (and gruesome) Rule 404(b) evidence concerning his co-defendant's nine prior murders against him and imputed guilt by association.   Id.   Noting that "[g]eneric allegations of prejudice will not suffice, for 'neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance[,] the Fifth Circuit determined that the defendant failed to "identify specific instances of prejudice unremedied by limiting instructions."   Id. (citations omitted).

Even if prejudice attends joinder (as it almost always does), it may be remedied or mitigated by limiting instructions or other tailored relief.   See Zafiro, 506 U.S. at 538-39 (citation omitted); see also Ledezma-Cepeda, 894 F.3d at ("in conspiracy cases we generally favor specific instructions over severance. That is because it is 'generally presume[d]' that juries 'follow instructions given to them by the district court' and are capable of 'compartmentaliz[ing] the evidence against each defendant.'").

*D.*

Additional procedural considerations inform the issues of misjoinder or prejudicial joinder.  In the ordinary case, it is the government seeking joint trial of related indictments (or joining the charges in the first instance).  As extensive prior proceedings have revealed, however, this is not an ordinary criminal case.  Here, the defendants have consistently gone on the offensive and placed at issue government misconduct and motivation; Ms. Burdett's latest motion (and the government's latest opposition) is no exception.  Where, as here, it is the defendant claiming that the government wrongly failed to join indictments and it is the government suggesting that joinder would be improper as a matter of law (and, failing that, that joinder would be prejudicial to both the government and the defendants), this role-reversal triggers another procedural discussion.

Two additional procedural considerations animate the government's and Ms. Burdett's disparate positions on joinder and prejudice and, thus, inform the Court's resolution of their dispute.  One is the concept of waiver and the other is the standard of review governing erroneous trial court rulings on joinder.

Defendants generally may urge two grounds challenging joinder of offenses or defendants: misjoinder or prejudicial joinder.  "[B]oth Rule 8 objections to 'misjoinder' and Rule 14 motions to

sever for 'prejudicial joinder' come within the scope of Rule
12(b)(3) and 12(e), and therefore must be filed before trial or
are waived." United States v. St. Martin, 119 Fed.Appx. 645, 649
(5th Cir. 2005)(unpublished)(citing United States v. Mann, 161
F.3d 840, 862 (5th Cir. 1998)).  When a party fails to file either
a Rule 8 objection to misjoinder or a Rule 14 motion to sever
before trial, and fails to provide adequate justification to the
Fifth Circuit for failing to do so, the Fifth Circuit has indicated
it "need not even address the merits of their argument."  Mann,
161 F.3d at 862; St. Martin, 119 Fed.Appx. at 649 (finding that
the defendant "invited any potential joinder error where defendant
failed to object to another party's counsel's request for a joint
trial and that she waived any Rule 8 or Rule 14 objections).
Unlike the abuse-of-discretion standard of review applicable to
rulings on Rule 13 or Rule 14 motions, the propriety of joinder
under Rule 8 is a question of law that the appellate court would
generally review de novo; but even if joinder should not have been
permitted under Rule 8, a conviction generally will not be reversed
unless the failure to sever was harmless.  See United States v.
Turoff, 853 F.2d 1037, 1042 (2d Cir. 1988)(citations omitted).

This deference or lax error standard is all that is required
because misjoinder is not a violation of Constitutional dimension.
See Lane, 474 U.S. at 446 and n.8 (observing that misjoinder might
only "rise to the level of a constitutional violation ... if it

results in prejudice so great as to deny a defendant his [or her] Fifth Amendment right to a fair trial). Thus, although "Rule 8(b) ... requires the granting of a motion for severance unless its standards are met[,]" misjoinder under Rule 8(b) is subject to harmless-error analysis on appeal. Id. at 449 and n.12 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)(An error involving misjoinder under Rule 8 is harmless unless it "'affects substantial rights' and ... results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'")).[15]

In Lane, the Supreme Court resolved a Circuit split, ultimately rejecting the Fifth Circuit's determination that misjoinder is *per se* prejudicial. See id. at 444-46. There, James Lane and his son, Dennis, were indicted in a six-count indictment charging mail fraud in connection with insurance claims for fire damage to a restaurant and duplex that James had hired an arsonist to burn. Id. at 440-42. Count 1 charged James with mail fraud related to the restaurant fire. Counts 2-4 charged both defendants with mail fraud related to the duplex fire; Count 5 charged both with conspiracy to commit mail fraud related to a flower shop arson plan; and Count 6 charged Dennis with perjury before the grand

---

[15] It was unnecessary for the Supreme Court to "decide whether the degree of prejudice necessary to support a Rule 14 motion for severance is identical to that necessary to require reversal for a Rule 8(b) error." Id. at 449 n.12.

jury.  Id. at 442.  The district court denied the Lanes' motions
for severance and the trial proceeded jointly before a jury; when
evidence relating to the restaurant fire was admitted, the trial
court instructed the jury not to consider that evidence against
Dennis; the trial court repeated this instruction in the final
charge along with the instruction to consider separately each
defendant and each count.  Id.  The jury convicted on all counts.
On appeal, the Fifth Circuit reversed the Lanes' convictions and
remanded for new trials; the court concluded that Counts 2 through
6 were properly joined, but agreed with the defendants that the
count charging James with mail fraud related to the restaurant
fire -- Count 1 -- failed the Rule 8(b) test and was thus misjoined.
Id. at 443.  Notably, the Supreme Court determined that misjoinder
was not inherently prejudicial and thus found that Count 1's
misjoinder was harmless:

> When evidence on misjoined Count 1 was introduced, the
> District Court provided a proper limiting instruction,
> and in the final charge repeated that instruction and
> admonished the jury to consider each count and defendant
> separately.  Moreover, the same evidence on Count 1
> likely would have been admissible on joint retrial of
> Counts 2 through 6 to show James Lane's intent under
> Federal Rule of Evidence 404(b).  Any error therefore
> failed to have any "substantial influence on the
> verdict."

Id. at 450 (citation omitted).

21

II.

A brief summary of the parties' contentions contextualizes these procedural issues before the Court turns to resolve the distinct but related issues of misjoinder and prejudicial joinder.

*A.*

Nicole Burdett requests that the Court order that her separate criminal cases be tried together consistent with Rule 13.  Broadly construing Rule 8's joinder considerations, Ms. Burdett submits that the charges against her in Criminal Action Number 20-139 could have been charged in 20-55.  These cases involve the same IRS agent, the same witnesses, the same alleged tax offenses for the same years, prepared by the same tax preparer, whom the defendants jointly allege made the similar mistakes in the Schedule Cs, listing business expenses for the same law firm.  The government's theory of both cases is that Ms. Burdett provided Henry Timothy financial information that mixed business and personal expenses, and that she willfully committed tax offenses by relying on Timothy's inclusion of personal expenses on the Schedule Cs.

Considering the "theory of the investigation" and "books and records and preparation of tax returns" sections of the IRS Prosecution Memos and the government's witness and exhibit lists illustrates the common evidence the government intends to introduce in each case.  Timothy acted as a tax preparer for Ms.

Burdett's family, she hired him after she graduated from law school; and she introduced Mr. Williams to Timothy, prepared the financial records for the law firm, and delivered them to Timothy, who used those records to prepare Mr. Williams' and Ms. Burdett's tax returns.

Requiring separate trials involving overlapping facts, witnesses, and evidence would be inefficient and inequitable. In response to Ms. Burdett's discovery request, the government scolded in response that it had "previously produced its discovery relating to Nicole Burdett as Government's Third Supplemental discovery ... in the Williams/Burdett case." The government's incompatible arguments cannot be reconciled: it cannot argue on the one hand that the evidence relevant to the charges against Ms. Burdett in 20-139 would be admissible against her in 20-55 while it simultaneously opposes a joint trial and demands that the defense and the Court bear the burden of the repetition.

Allowing the government to take two shots at Ms. Burdett, she contends, would burden the Court, counsel, Ms. Burdett, and the CJA panel with two trials on the same issues. Successive trials involving the same facts and witnesses would also give the government an unfair advantage over Ms. Burdett in a second trial after having had its witnesses subjected to cross-examination and seen Ms. Burdett's defense in the first trial.

Ms. Burdett invokes the "common thread" theory of Rule 8(b) joinder and that common thread is Mr. Timothy and the common method of alleged tax evasion.  Just like the government alleges that the tax offenses were committed by Ms. Burdett and Mr. Williams along with Mr. Timothy in Number 20-55, the government likewise alleges that the tax offenses relative to Ms. Burdett's personal taxes in Number 20-139 were committed by her using the same basic method: falsifying business expenses and other information on the returns during the same tax years with Timothy participating as tax preparer.  Critically, the government will attempt to prove Ms. Burdett's willfulness in Number 20-55 with the conduct separately charged in Number 20-139.

Finally, Ms. Burdett submits that she and Mr. Williams will present harmonious defenses against the two separate indictments: Mr. Timothy falsely held  himself out to be a CPA; Ms. Burdett and Mr. Williams relied upon Timothy to determine what expenses were properly deductible and what filing status was appropriate; Timothy admitted in civil litigation that he in fact made all decisions about how to prepare the returns and schedule the deductions; and that they are not criminally responsible for Timothy's mistakes.

For its part, the government counters that joinder would be improper and prejudicial.  The government first invokes the

presumption of regularity to support its charging decisions in this case. It could not have joined the charges relating to Ms. Burdett's personal taxes in the indictment charging Mr. Williams and Ms. Burdett pertaining to his taxes. To do so would fail Rule 8(b)'s test because Ms. Burdett and Mr. Williams did not participate in the same acts or in the same series of acts or transactions. The government underscores that Mr. Williams had no "involvement whatsoever with the preparation of Burdett's personal tax returns." That Williams and Burdett shared the same tax preparer, without more, is insufficient to sustain joinder under Rule 8(b). Except for Timothy's testimony that he prepared the tax returns and testimony from IRS agents attesting to information on the returns, the government contends that the cases are "factually unrelated" and that it will use "completely different" evidence and testimony in its case against Mr. Williams and Ms. Burdett from that used in its separate case against Ms. Burdett.

If the cases are joined for trial, the government is concerned that evidence pertaining to Ms. Burdett's "other bad acts" such as "illegally obtaining Medicaid benefits" will be presented in the case against Ms. Burdett; to present this in the case joining Mr. Williams "could be prejudicial to Williams in a joint trial." Additionally, for the government to prepare for two trials simultaneously would be burdensome and would extend an already

lengthy and complex trial.[16]  If the Court considers joining the trials, the government urges the Court to require that Mr. Williams "agree to waive any prejudice resulting from joinder of these cases."

Finally, it should be noted that Mr. Williams has indicated that he does not oppose Ms. Burdett's motion for joint trial of separate cases.

*B.*

With these contentions framing the joinder debate, the Court turns to consider whether these tax fraud indictments could have been joined; put differently, whether consolidation would result in misjoinder.  It is a close call.

Ordinarily, "[w]hether joinder is proper is ... determined from the allegations in the indictment."  McRae, 702 F.3d at 820 (citations omitted).  However, there is inconsistency in the case literature concerning whether courts are limited to the face of indictments in considering whether joinder is proper.[17]  That

_____

[16] The government estimates that the trial of Criminal Action Number 20-55 will last two weeks and 20-139 will last one week.

[17] See United States v. McGill, 964 F.2d 222, 242 (3d Cir. 1992)(When considering whether joinder is proper, district courts may look beyond the face of the indictments to other pretrial documents that "clarify the factual connections between the counts."); United States v. Daniels, 803 F.3d 335, 340 (7th Cir. 2015)("[I]n assessing the propriety of joinder, we look solely to the allegations in the indictment."); United States v. Harrelson, 754 F.2d 1153 (5th Cir. 1985)(indicating that, absent arguments of

26

debate is merely academic here, where both sides stray wildly from the allegations in the indictments, predicating their contentions instead on a robust record and allegations developed after and colored by persistent claims by defendants regarding prosecutorial misconduct.

In undertaking the misjoinder analysis, the Court underscores that the propriety of joinder is tested solely by Rule 8(b) and is for the Court to determine as a matter of law.  Contrary to what the government implies in its papers, there is no thumb on the scale in favor of the government's decision to join offenses and defendants, or not.  And where, as here, the defendants persistently claim government misconduct or prosecutorial abuse of discretion, the Court would not be inclined to defer to the government's joinder decision.  In any event, the Federal Rules do not limit the trial consolidation feature to the government's whim.

---

prosecutorial misconduct, the district court should consult the initial allegations of the indictment to determine propriety of joinder of defendants and offenses); United States v. Tarango, 396 F.3d 666, 672 (5th Cir. 2005)("The propriety of joinder will often be assessed by looking to the allegations contained in the indictment."); United States v. Johnson, 46 F.3d 1166, 1172 (D.C. Cir. 1995)("[J]oinder is proper so long as the government presents evidence before trial that the defendants' offenses arose out of the same scheme."); United States v. Dominguez, 226 F.3d 1235, 1241 n.7 (11th Cir. 2000)("when the defendant attacks joinder as improper based on the indictment but later evidence shows that joinder is proper, we look beyond the face of the indictment.").

Construing Rule 8(b)'s requirements broadly and mindful that "All defendants need not be charged in each count[,]" the Court applies common sense to discern the degree of logical relatedness between the acts charged in both indictments.  Examining the relatedness of the facts underlying each offense reveals a substantial identity of facts or participants and, thus, a series of transactions that is more than merely "similar acts."

Here, Ms. Burdett underscores that the government's theory of the two cases -- Ms. Burdett introduced her family's tax preparer, Henry Timothy, to Mr. Williams; Ms. Burdett allegedly provided inaccurate financial and other information to Mr. Timothy (on behalf of herself and Mr. Williams); and that she pressured Timothy to take improper deductions and otherwise prepare her individual tax returns and Mr. Williams' tax returns improperly, resulting in an underpayment of personal income taxes --  contains sufficient factual overlap to support joinder.  The Court agrees.

The government's arguments to the contrary -- that Mr. Williams is not charged in 20-139 and that there will be a substantial quantity of evidence unrelated to him if the cases are joined -- are well taken.  But they nevertheless fail to contend with the realities that (i) Rule 8(b) explicitly disclaims a requirement that all defendants be charged in all counts; and (ii) the quantitative evidence disparity and potential for prejudicial

spillover is true for many cases, such as conspiracy and multi-
conspiracy cases, which the government frequently joins, and
properly so.  The government's other argument -- merely sharing a
tax preparer is not sufficient to permit joinder of offenses --
again misses, or obscures, the point. The government frames this
contention so abstractly as to be hypothetical insofar as it
understates the factual realities of *these* cases.  To be sure, if
two independent strangers who happen to share the same tax preparer
... a tax preparer who himself has no culpability in completely
parallel disparate tax fraud schemes ... are charged with
defrauding the IRS, then the Court would be inclined to agree with
the government that this singular happenstance "common thread"
non-complicit tax preparer, without more, would fail support
joinder under Rule 8(b).[18]  But this is not the reality presented

---

[18] This abstract hypothetical was conceived by the Fourth Circuit,
as beyond the scope of what the common thread doctrine could
tolerate for supporting Rule 8(b) joinder.  See United States v.
Whitehead, 539 F.2d 1023, 1025 (4th Cir. 1976)(holding that joinder
was impermissible under Rule 8(b) where the only nexus between two
defendants was that they happened to live in the same apartment
building and (independently) participated in similar offenses
(drug deals) on different dates with a common third defendant; and
observing that indulging "the government's theory might well allow
us to join in a common indictment and trial two delinquent
taxpayers who used the same accountant.").  But there is something
more here, which brings the cases logically within the scope of
Rule 8(b) and the common thread doctrine; these charges present
more than mere factual similarity of separate and independent
parallel tax fraud charges.  Cf. See United States v. Evans, 753
Fed.Appx. 295, 296-97 (5th Cir. 2018) (unpublished) (initial
joinder proper where indictment alleged that "Evans and Baker [who
were patients of Washington, a licensed counselor] engaged in a

here:  the income tax fraud counts are unified by the common thread of (not only Ms. Burdett but) a tax preparer, whom is an unindicted co-conspirator in Criminal Action Number 20-55, and whom -- depending on if the government's theory or the defense narrative is credited -- facilitated or singularly orchestrated defrauding the IRS (and perhaps his clients in the process) by preparing false and fraudulent tax returns for or with both Jason Williams and Nicole Burdett for the same years.[19]  The government's theory of both cases is that Ms. Burdett provided Henry Timothy financial information that mixed business and personal expenses, and that she willfully committed tax offenses by relying on Timothy's (erroneous or fraudulent) inclusion of personal expenses on the Schedule Cs.   Insofar   as   the   government   contends   it   has quantitatively more and qualitatively different evidence against Ms. Burdett to be admitted in 20-139, there seems no dispute that there will be some "separate" evidence against each defendant, but the government well knows that jury will be instructed to consider

---

scheme to receive kickbacks in exchange for filling out falsified medical documents that were used by co-conspirators to defraud the [Department   of   Labor].   Although   Baker   and   Evans   acted independently of each other and at different times, they were part of a common conspiracy to profit from defrauding the DOL by providing Washington [a licensed professional counselor] with false medical documentation for billing purposes.").
[19] These cases involve Ms. Burdett, the same IRS agent, many of the same witnesses, the same alleged tax offenses for the same years, prepared by the same tax preparer, whom the defendants allege made the same mistakes in the Schedule Cs listing business expenses for the same law firm.

each defendant and charge separately.[20]  Even though all agree that Jason Williams played no role or had no knowledge regarding Timothy's conduct with or for Ms. Burdett concerning her own personal taxes, the income tax fraud counts in both indictments are nevertheless unified by a substantial (although not complete) identity of participants and factual overlap.

Considering the "theory of the investigation" and "books and records and preparation of tax returns" sections of the IRS Prosecution Memos and the government's witness and exhibit lists illustrates the common evidence the government intends to introduce in each case.[21]  And, although the government implies that the evidence it plans to introduce against Ms. Burdett in 20-139 would unfairly prejudice Mr. Williams if introduced in 20-55, it stops short of indicating that it will not seek to introduce that same evidence through Federal Rule of Evidence 404(b).[22] Although the parties point to no case literature countenancing consideration of this for joinder inquiries, Ms. Burdett submits

---

[20]  It is presumed that jurors follow their instructions.
[21] In response to Ms. Burdett's discovery request, the government responded that it had "previously produced its discovery relating to Nicole Burdett as Government's Third Supplemental discovery ... in the Williams/Burdett case."
[22] The Court does not determine that "other acts" evidence from 20-139 would be admissible in 20-55 against Ms. Burdett to prove willfulness, only that the Court need not indulge in the government's favor its blatant failure to address this typical prosecution strategy and its bearing on the joinder analysis.

that the defense to both cases will be harmonious and presented through the same witnesses.[23]

For joinder of the defendants to be proper, there must be some substantial identity of facts or participants between offenses, which are logically related. Here, there will be some overlapping evidence and joint proof at trial. With convicted felon Henry Timothy as tax preparer and his interactions with Ms. Burdett being the common link to the government's theory of both 20-55 and 20-139, and facts and participants unifying the defendants' defense, the Court finds that the income tax fraud counts share a substantial identity of facts or participants in transactions sufficiently connected to be regarded as a "series" within the broad scope of Rule 8(b).

*C.*

Having determined that the charges could have been joined, the Court must consider whether joinder would be prejudicial. Only the government claims prejudice. Nevertheless, the Court considers global prejudice because, as the arbiter of administering a fair

---

[23] That neither Ms. Burdett nor Mr. Williams acted willfully when they relied upon tax preparer Henry Timothy, who himself decided how to prepare the tax returns. Timothy acted as a tax preparer for Ms. Burdett's family, she hired him after she graduated from law school; and she introduced Williams to Timothy, prepared the financial records for the law firm, and delivered them to Timothy, who used those records to prepare Williams' and Burdett's tax returns.

and impartial trial, avoiding and minimizing the potential for prejudice remains paramount.[24]

At this time and on this record, the government is not entitled to relief from joinder under Rule 14. The government's submission that it would be forced to prepare for and present two cases simultaneously is insufficient to constitute prejudice that would overcome the efficiencies and safeguard against inconsistent verdicts furthered by a joint trial of cases that could have been joined.[25] The government articulates a "concern" that the joint trial might prejudice Jason Williams (or, perhaps a more accurate characterization being that he might later claim ineffective assistance of counsel for his attorney's strategic decision to not oppose joinder). Critically, the procedural realities addressed above, including the doctrine of waiver, answer the government's "concerns" about defendant prejudice or future ineffective assistance of counsel claims. That the government would seek to admit evidence from 20-139 as "other acts" evidence in 20-55 in its effort to fulfill its burden to prove Ms. Burdett's willfulness

---

[24] See 1A Charles Alan Wright, et al., Fed. Prac. & Proce. Crim. § 142 (5th ed. 2020)("courts should be cautious in evaluating joined cases to ensure that a defendant who is presumptively innocent is not given less than a fully fair trial simply to serve administrative concerns.").

[25] Cf. United States v. Azor, 881 F.3d 1, 11 (1st Cir. 2017)(something more than "[g]arden variety prejudice" must be shown to warrant severance; noting a reluctance to second-guess severance denials "[e]ven where large amounts of testimony are irrelevant to one defendant[.]").

additionally dooms its contention of prejudice to it and its vicarious contention of prejudice as to Mr. Williams.[26]  Although the Court agrees that evidence related solely to Ms. Burdett could spillover and prejudice Mr. Williams (as is uniformly true of any case with multiple defendants), the Court is satisfied both that cautionary instructions will suffice to cure or minimize this prejudice and that such instructions would be required regardless of a joint trial because -- as Ms. Burdett has pointed out (and as the government has not disputed) -- the government would present evidence of Ms. Burdett's alleged personal tax fraud in both cases if tried separately.

In conclusion, even assuming the risk of spillover and other prejudice inevitable in conducting a joint trial, the Court finds that it can be mitigated by cautionary instructions.

***

Because joinder is proper as a matter of law and considering that "Rules 8(b) and 14 are designed 'to promote economy and efficiency and to avoid multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the

---

[26] More concerning, the government fails even to acknowledge that it would seek to introduce "other acts" evidence.  If it indeed intended to keep completely separate the evidence from both cases, then perhaps it will re-urge its position by motion and disabuse the Court (and Ms. Burdett) of the assumption that the government will use all the evidence at its disposal in both cases.

right of defendants to a fair trial[,]'"[27] IT IS ORDERED: that Ms. Burdett's Rule 13 motion for joint trial of separate cases is GRANTED.  IT IS FURTHER ORDERED: that the pretrial conference set for May 4, 2021 and the jury trial set for May 24, 2021 in Criminal Action Number 20-139 are hereby continued; a pretrial conference shall be held on October 19, 2021 at 1:30 p.m. and a jury trial shall commence on November 1, 2021 in both Criminal Action Numbers 20-55 and 20-139, unless otherwise ordered.

New Orleans, Louisiana, March 18, 2021

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[27] See Zafiro, 506 U.S. at 537, 540 ("There is a preference in the federal system for joint trials of defendants who are [or could have been] indicted together.").

35