UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 20-139 |
| NICOLE E. BURDETT | SECTION F(3) |

### REPORT AND RECOMMENDATION

Before the Court is a Motion for Inquiry Regarding Attorneys' Fees filed by the United States of America ("Motion for Inquiry") (Rec. Doc. No. 87). Defendant filed an opposition along with an updated financial affidavit. (Rec. Doc. No. 88). The Court held oral argument on the motion on October 6, 2021, at which time it granted the motion to seal the financial affidavit noting the Government's objection to same. Based in part upon the supplemental brief and evidence filed by the Government raising numerous factual issues, the Court conducted a further *ex parte* examination of defendant, Nicole Burdett ("Defendant" or "Ms. Burdett"), under oath and under seal during the October 6, 2021 hearing. For the following reasons, the Court holds that the Motion for Inquiry is granted and upon review of the financials of Ms. Burdett, including the updated financial affidavit, the Court has determined that defendant remains entitled to Criminal Justice Act ("CJA") counsel.

**I.  BACKGROUND**

The Defendant in the instant case faces criminal tax prosecution in two cases in this Court— *USA v. Williams, et al*, 20-cr-55 and *USA v. Burdett*, 20-cr-139. The trial of this matter is currently set for January 24, 2022 (Rec. Doc. No. 81). The Government now moves for an inquiry into the appointment of counsel for Ms. Burdett to determine, "whether court appointed counsel should be terminated or in the alternative if the defendant has the means to contribute to the

1

payment of her Court appointed counsel." (Rec. Doc. No. 87 at p. 2). The Government states that such an inquiry is necessitated, in part, by recent travel taken by the Defendant and by her continued employment. (*Id.*). The Government further adds that despite the attestation of Defendant that she has substantial IRS tax debt, no payments have been made on those debts since 2020. (*Id.* at p. 3). At oral argument, the Government further contended that the income of the Defendant's spouse, the fact that she pays for her daughter's education, and the fact that she has a mortgage on a second home occupied by her mother should all be taken into consideration to determine Defendant's indigency.

In response, Ms. Burdett states that the travel referenced by the Government included a birthday trip for her daughter to Atlanta. She contends that the child's airfare is $200.00 and that her own companion fare totaled $25.00. At oral argument, she clarified that the $250.00 is the cost of concert admission and a companion ticket, and that airfare and lodging are being covered by her husband and her daughter's grandmother. She further provided that the costs related to a trip to Florida were covered by a friend. In addition, Ms. Burdett submitted a sealed updated affidavit which, *inter alia,* provided that she is currently self-employed at Williams & Associates and attested to a zero net monthly income. Ms. Burdett executed these documents under oath and under the penalty of perjury.

II.     **LAW AND ANALYSIS**

    **A. Motion to Seal Updated Financial Affidavit**

The CJA, which governs the appointment of counsel for indigent defendants, does not address the release of documents provided to the Court by a defendant to determine his or her financial eligibility for appointed counsel. *See* 18 U.S.C. § 3006A; *United States v. Dalton*, No. 1:17CR00024, 2018 WL 356205, at *3 (W.D. Va. Jan. 10, 2018). Likewise, the Revised Plan of

July, 2018 for Furnishing Representation Pursuant to The Criminal Justice Act Of 1964 (18 U.S.C. § 3006A) for this district does not address the sealing or disclosure of financial affidavits or other documents submitted by defendants in order to obtain appointed counsel.[1]

The Court finds persuasive those cases which have held that financial affidavits submitted in connection with a request for appointment of counsel should be sealed where a defendant's financial status, as revealed by the submitted affidavits, is directly related to the underlying charges. *See United States v. Hickey,* 997 F.Supp. 1206 (N.D. Cal. 1998). In fact, the Fifth Circuit in *United States v. Moore* recognized that:

> A constitutional issue as yet unresolved is raised in cases where persons are charged with failure to pay their income taxes and at the same time are required to furnish financial data to establish inability to afford counsel for their defense.

671 F.2d 139, 140 (5th Cir. 1982). The Court in *Moore* also relied on the Eighth Circuit's ruling in *United States v. Anderson* and recognized that although the defendant has the burden of proving inability to afford counsel "an accused caught in the dilemma should be given the opportunity to disclose the information to the court in camera, following which the data should be sealed and not be made available for the purpose of prosecution." *Id*. (citing *United States v. Anderson*, 567 F.2d 839, 840 (8th Cir. 1977)). Furthermore, any prejudice is diminished by the fact that the unsealing of Defendant's affidavit and other financial information can be sought at the close of trial to allow the Government to evaluate the necessity and wisdom of pursuing a recoupment proceeding under 18 U.S.C. § 3006A(f) or a perjury prosecution if it is determined that Defendant has obtained appointed counsel through untruthful financial affidavits. The Government thus maintains the right to investigate possible perjury in the affidavit after trial and

---

[1] *Criminal Justice Act Plan*, Eastern District of Louisiana,
http://www.laed.uscourts.gov/sites/default/files/pdfs/CJA%20Plan%202018%20with%20Approval%20ELA.pdf
(last visited Oct. 22, 2021).

ultimately the truth seeking function will not be compromised. *United States v. Hyde*, 208 F. Supp. 2d 1052, 1054 (N.D. Cal. 2002) (citing *United States v. Hickey*, 185 F.3d 1064, 1067 (9th Cir.1999)). Accordingly, the affidavits should remain sealed.

### B. Appointment of Counsel under the CJA

The CJA provides that courts may "furnish [ ] representation for any person financially unable to obtain adequate representation." 18 U.S.C. § 3006A(a); *In re Smith*, 586 F.3d 1169, 1171–72 (9th Cir. 2009). Pursuant to the CJA guidelines, "[a] person is financially unable to obtain counsel within the meaning of 18 U.S.C. § 3006A(b) if the person's net financial resources and income are insufficient to obtain qualified counsel." 7A *Guide to Judiciary Policy* § 210.40.30(a) (internal quotation marks omitted).

In this Circuit, the Court is required to make the appropriate inquiry into the financial status of a defendant to determine whether the defendant is entitled to appointed counsel. *United States v. Foster*, 867 F.2d 838, 841 (5th Cir. 1989). Defendant has the burden of establishing the financial inability to retain a defense attorney. *Id.* Courts assess whether the criminal defendant is financially able to pay for his or her own defense based on present circumstances. *See United States v. Jimenez*, 600 F.2d 1172, 1174 (5th Cir. 1979) (observing that § 3006A considers a defendant's current ability to pay and availability of funds because it is written in the present tense). Representation by a court-appointed attorney may be terminated "[i]f at any time after the appointment of counsel ... the court finds that the person is financially able to obtain counsel or to make partial payment for the representation." 18 U.S.C. § 3006(A)(c).

"In determining whether such insufficiency exists, consideration should be given to[ ] the cost of providing the person and his dependents with the necessities of life." 7A *Guide to Judiciary Policy* § 210.40.30(a)(1). "Any doubts as to a person's eligibility should be resolved in the person's

favor." 7A *Guide to Judiciary Policy* § 210.40.30(b). A defendant may be found partially eligible "[i]f a person's net financial resources and income anticipated prior to trial are in excess of the amount needed to provide the person and that person's dependents with the necessities of life and to provide the defendant's release on bond, but are insufficient to pay fully for retained counsel." 7A *Guide to Judiciary Policy* § 210.40.40; *United States v. Harris,* 707 F .2d 653, 661 (2d Cir.1983) (noting that a court should "explicitly consider [a defendant's] ability to afford counsel in light of economic realities," including "the cost of a criminal defense and the cost of providing for [herself] and dependents"). In such a situation, "the judicial officer should find the person eligible for the appointment of counsel under the CJA and should direct the person to pay the available excess funds to the clerk of the court at the time of such appointment or from time to time thereafter." 7A *Guide to Judiciary Policy* § 210.40.40; *see also United States v. Voll,* No. 216CR00265GMNCWH12, 2019 WL 2578760, at *2 (D. Nev. June 24, 2019).

A court's decision to terminate a defendant's eligibility for court-appointed counsel or to require reimbursement is not one that should be reached lightly. *United States v. Wilson,* 597 F.3d 353, 357-58 (6th Cir.2010). "A thorough inquiry into the defendant's finances, though not [necessarily] a full adversarial hearing, should precede any such order." *Id.* at 358; *see also United States v. Fincher,* 538 F.3d 868, 876 (8th Cir.2008) ("*Fincher I*") (noting that "a 'full inquiry' into the defendant's actual ability to retain counsel" is required before the court orders reimbursement); *United States v. Foster,* 867 F.2d 838, 841 (5th Cir.1989) (noting that district courts must make an "appropriate inquiry" into a defendant's financial status before determining eligibility under the CJA).

As courts have observed, there are "no precise rules defining when a defendant is financially unable to obtain an adequate defense." *United States v. Parker*, 439 F.3d 81, 97 (2d

5

Cir.2006) (internal quotation marks and citation omitted). Indeed, the CJA Guide to Judiciary Policy simply states that a person is eligible for court-appointed counsel when "the person's net financial resources and income are insufficient to obtain qualified counsel." 7A *Guide to Judiciary Policy* § 210.40.30(a). Nevertheless, it is clear that the standard for eligibility under the CJA is "something less than indigency or destitution." *United States v. Harris,* 707 F.2d at 660; *accord United States v. Fincher*, 593 F.3d 702, 705 (8th Cir.2010) ("*Fincher II*"), ("[F]inancial inability to pay does not mean indigence or destitution."); *Parker,* 439 F.3d at 96 (same); *Foster,* 867 F.2d at 839 (same).

Here, the Government first complains that the instant inquiry is necessitated by recent birthday travel taken by Defendant and her daughter.  The Government contends that a recent trip to Destin, Florida demonstrates that Defendant is not indigent.  In response, Ms. Burdett contends that she travelled with friends at their expense as a gift for her fortieth birthday.  In *United States v. Pinckney, Sr.*, the Government moved for revocation of the appointment of counsel for defendant or for an order that said defendant pay reasonable attorney's fees to his appointed attorney or to the Court for deposit in the United States Treasury as reimbursement. 491 F.Supp. 82, 83 (W.D. Mo. 1980). The Government argued that defendant Pinckney had obtained permission for a business trip to Hong Kong, that the round-trip coach class airline fare to Hong Kong was $1,564, and that hotel rooms in that city average $70 per night. *Id*. The Government asked the Court to assume that a person who can make such a trip "can afford to pay, at least in part, for his own attorney's fees" and that he must have "ample personal funds." *Id*. The court in *Pinkney* disagreed. The court concluded that the "[f]inancial ability to take a business trip to Hong Kong does not in itself raise any question of substance, under the circumstances. Significantly, the court recognized that "defendant Pinckney is not paying for his trip to Hong Kong . . . nor is he going to incur any

6

expense in this endeavor." *Id*.

Although there is no argument here that the trip was taken for business, the fact remains that Defendant has stated on the record that she did not incur any expenses related to the trip to Florida. The Government also complains that the Defendant's plans to celebrate her daughter's birthday in Atlanta further supports her lack of indigency. Again, the Government has presented no evidence that expenses for the endeavor will be incurred by the Defendant. The Government instead contends that even if such expenses are being covered by the Defendant's spouse or other family members, they should still be considered by this Court. This is incorrect. In determining whether a defendant is financially unable to retain counsel,

> "[t]he initial determination of eligibility should be made without regard to the financial ability of the person's family *unless* his family indicates willingness and financial ability to retain counsel promptly. At or following the appointment of counsel, the judicial officer *may* inquire into the financial situation of the person's spouse ... and *if* such spouse ... indicates [a] willingness to pay all or part of the costs of counsel, the judicial officer may direct deposit or reimbursement."

*7A Guide to Judiciary Policy* § 210.40.50 (emphasis added); *See e.g., U.S. v. Wilson*, No. 06-40091-JAR, 2008 WL 11483470, at *1 (D. Kan. Jan. 29, 2008) (finding Defendant eligible for appointed counsel because neither her sister nor her husband was willing or able to continue to pay retained counsel); *Matter of Extradition of Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2020 WL 510229, at *1 (N.D. Cal. Jan. 31, 2020) (finding that if Defendant's wife is unwilling to pay for his legal expenses, it doesn't matter how much money she has); *U.S. v. Konrad*, No. 11-15, 2011 WL 6739464, at *1 (E.D. Pa. Dec. 21, 2011) (finding that because Defendant's wife did not indicate a willingness to pay, the Court would not include Defendant's wife's income and individually-held assets in determining Defendant's ability to retain qualified counsel); *U.S. v. Panyard*, No. 07-20037-2, 2009 WL 10679412, at *1 (E.D. Mich. June 23, 2009) (finding that the Court may consider Defendant's wife's assets in deciding whether Defendant can afford to pay for

7

his transcript because Defendant's affidavit indicated his wife's willingness to help pay his legal fees.).[2] The Government's argument concerning Defendant's lack of payments on IRS debt is also unavailing. A debt is a debt. The Court is not required to, nor will it police the Defendant's payment of her debts in order to determine the eligibility of counsel.

## III.     CONCLUSION

**WHEREAS** the Government has requested that the Court inquire to determine Defendant's true financial situation and determine whether she remains entitled to CJA counsel,

**IT IS RECOMMENDED** that based on the evidence presented by both parties and consideration of all the pertinent factors, the Court should conclude that Ms. Burdett is entitled to continued representation under 18 U.S.C. § 3006A.

---

[2] Although such assets will be considered in the evaluation if it is discovered that a Defendant intentionally concealed, transferred, or disposed of the assets in order to avoid liability, no such showing, or even argument, has been made here. *See, e.g., U.S. v. Deutsch*, 599 F.2d 46,49 (5th Cir. 1979) (finding that Defendant was not eligible for a court appointed attorney because he engaged in a practice of transferring assets to his wife in order to avoid liability); *U.S. v. Hung Thien Ly*, No. CR407-286, 2007 WL 9657599, at *1 (S.D. Ga. Oct. 22, 2007) (finding that Defendant was not eligible for a court appointed attorney because Defendant systematically transferred his assets to his wife and structured his finances to avoid creditor liability and obtain appointed counsel at public expense).

## OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b)A party's failure to object bars that party from: (1) entitlement to de novo review by a district judge; and (2) appellate review of the unobjected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 22nd day of October, 2021.

                                                                                            _____
                                                                                            **DANA M. DOUGLAS**
                                                                                            **UNITED STATES MAGISTRATE JUDGE**