UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 20-55 |
| JASON R. WILLIAMS, ET AL. | SECTION: "I" |
| | |
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO: 20-139 |
| NICOLE BURDETT | SECTION: "I" |

**ORDER AND REASONS**

Before the Court is the government's motion *in limine* to exclude defense expert testimony. For the reasons that follow, the motion is **GRANTED in part** (with respect to the second sentence of paragraph 31 of the revised expert report), **DENIED in part** (with respect to paragraph 14(a) of the revised expert report), and **DEFERRED to trial, in part,** as to the government's remaining objections.

**Background**

A critical issue in the government's case is whether the defendants willfully falsified tax returns by directing their tax preparer at the time, Henry Timothy ("Timothy"), to inflate Schedule C business expenses or, instead, whether the defendants reasonably relied on the advice and services of Timothy. Defense counsel have disclosed to the government a report by Harold A. Asher ("Asher"), an expert Certified Public Accountant and Fraud Examiner, whom will testify for the defense at trial. As the defendants put it, "Mr. Asher will opine on facts that squarely negate

1

the government's theory of prosecution and support the defense theory of good faith reliance and lack of proof beyond a reasonable doubt."

Previously, the Court held a status conference, at which time it dismissed without prejudice the government's motion *in limine* to exclude portions of Asher's proposed testimony contained in his initial report, the Court being critical of certain specific portions of Asher's report. The Court permitted the defendants to submit a revised expert report and the defendants did so. The scope of Asher's report encompasses the role and qualifications of CPAs and the standards of conduct applicable to a CPA; rules regarding the preparation of tax returns, including Schedule C deductions, Earned Income Tax Credit filings, and Head of Household filings; the defendants' hiring of tax preparer Henry Timothy, whom purportedly held himself out to be a CPA, to prepare their tax returns; Timothy's review of documents provided by the defendants to Timothy for tax return preparation; Tax Court and IRS standards governing taxpayers' reliance on a tax preparer; Timothy's treatment of the tax returns of defendants, those of his other clients, and his own; and penalties to which tax preparers like Timothy are subject for violations of the Internal Revenue Code.

Re-urging the arguments advanced in support of its first motion to exclude, the government now moves to exclude portions of Asher's proposed expert testimony on the grounds that his proposed testimony (1) improperly comments on the defendants' *mens rea*; (2) seeks to introduce the defendants' self-serving hearsay statements through a third-party witness; (3) invades the province of the jury by offering conclusions as to witness credibility; and (4) violates Rule 403 because any probative value of the testimony is substantially outweighed by the dangers identified in the rule.

I.

Four Rules of Evidence provide the framework to resolve the government's motion *in limine* challenging Asher's proposed testimony. Article VII of the Federal Rules of Evidence governs Opinions and Expert Testimony. As a threshold matter, to be admissible, expert testimony must be helpful to the trier of fact. *See* Fed. R. Evid. 702(a) (for opinion testimony to be admissible, the expert's specialized knowledge must, among other things, "help the trier of fact to understand the evidence or to determine a fact in issue[.]").[1] Given that jurors are "the judges of the facts" (Fifth Circuit Pattern Instruction No. 1.04) and "the sole judges of the credibility or 'believability' of each witness and the weight to be given to the witness's testimony" (Fifth Circuit Pattern Instruction No. 1.09), it follows that an expert witness may not expressly state that he believed or disbelieved a certain witness. *See United States v. Moore*, 997 F.2d 55, 59 (5th Cir. 1993)(citation omitted). Express bolstering or vouching, or explicit discrediting, is simply unhelpful.

Rule 703 governs sources and bases for expert opinions; it provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

---

[1] Rule 702 provides:
   A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
   (b) the testimony is based on sufficient facts or data;
   (c) the testimony is the product of reliable principles and methods; and
   (d) the expert has reliably applied the principles and methods to the facts of the case.

> Regarding opinions on ultimate issues, Rule 704 states:
>
> (a) In General—Not Automatically Objectionable. An opinion is not objectionable just because it embraces an ultimate issue.
> (b) Exception. In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Just as an expert witness may not expressly bolster or direct a credibility determination, nor may an expert witness in a criminal case usurp the jury's role by drawing for the jury the conclusion that a defendant did or did not have the requisite mental state. *United States v. Dotson*, 817 F.2d 1127 (5th Cir. 1987), *vacated in part on other grounds on reh'g*, 821 F.2d 1034 (5th Cir. 1987), is the seminal Fifth Circuit case analyzing the boundary between permissible summary opinion tied to facts and impermissible opinions which draw the forbidden conclusion that the defendant did or did not have the requisite mental state.  There, the Fifth Circuit noted that Rule 704 prohibits experts from testifying as to the "ultimate legal issue" (whether the defendant did nor did not have the requisite state of mind), "yet permits experts to 'present and explain' their diagnosis, that is, their analysis of the facts based on their special knowledge qualifying them as experts." *Dotson,* 817 F.2d at 1132. Ultimately, the Fifth Circuit found no error in the district court's admission of the government's tax expert's "summary of the evidence" supporting the government's tax evasion case, concluding that "the expert's summary merely explained his analysis of the facts indicating willful evasion, and did not, perhaps with the exception noted below, directly embrace the ultimate question of whether [the defendant] did in fact intend to evade income taxes." *Id.*  The court then considered the following excerpted testimony, which it characterized as "[t]he most borderline of the expert's statements":

4

> In 1983, again, [Dotson's net worth] increased again forty thousand dollars, almost the same amount it did in 1981 through the period, so they are consecutive increases, which lead me to believe that Mr. Dotson's net worth and/or his equity was increasing through the period. *This is indicative, and based on my experience shows to me, that he willfully and intentionally increased his income knowing full well that he had not reported the taxes due thereon.*

*Id.* (emphasis added). Even though the italicized excerpt reasonably "c[ould] be interpreted in two ways"—either a permissible summary or an impermissible conclusion on the ultimate issue—the Fifth Circuit determined that the district court did not err in admitting it. *Id.* In considering whether proposed testimony crosses the line, then, *Dotson* thus instructs the district court to evaluate "the focus of the [proponent's] questions" to determine whether that focus is "on facts that might support the jury's acceptance of an inference of intent ... [and whether] the responses of the expert were also focused on the evidence, rather than addressing the ultimate issue forbidden by rule 704." *Id.*

Context is thus critical to determining whether a proffered opinion is on the permissible side of the line between a summary tethered to facts and a direct statement regarding mindset. To be sure, "Rule 704(b) is not strictly construed and prohibits only a direct statement of the defendant's intent." *United States v. Speer*, 30 F.3d 605, 610 (5th Cir. 1994)(citing Dotson, 817 F.2d at 1132).

In addition to the Federal Rules of Evidence directed to opinion testimony, the permissible contours of an expert's proposed testimony are further defined by other evidence rules, such as the rule against hearsay. When a party objects to expert testimony on the ground that the expert is merely serving as a conduit through which hearsay testimony is admitted, the Court must consider whether such proposed testimony violates Rule 802, which articulates the rule against hearsay.[2]

---

[2] "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

5

"Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 802.  In considering whether proposed testimony violates the hearsay rules, then, the Court must remain mindful of the rules directed to permissible sources of expert testimony, specifically Rule 703.[3]  Indeed, as the Fifth Circuit has observed when considering whether an expert was merely a conduit for testimonial hearsay:

> Rule 703 allows an expert to base his testimony on otherwise inadmissible hearsay evidence.  Fed. R. Evid. 703.  An expert's opinion may be based on both the evidence in the case and his education and experience.  *United States v. Williams*, 447 F.2d 1285, 1290 (5th Cir. 1971)(en banc).  "Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as hearsay in disguise." *Id.*

*United States v. Lockhart*, 844 F.3d 501, 511-12 (5th Cir. 2016)(holding that government law enforcement officer testifying as a gang expert "did not serve as a conduit for inadmissible testimonial hearsay.").

Finally, as in any case, a typical catchall challenge to all evidence, including proposed expert testimony, invokes Rule 403, which vests the Court with discretion to employ a balancing

---

[3] Rule 703 states:
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  *But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.*

(emphasis added).  An unpublished Third Circuit opinion illustrates how the Rule 703 balancing test applies in the clearest of cases to exclude a proffered defense expert's proposed testimony that "was largely a conduit for hearsay [as it contained] more of [the defendant's] would be testimony than [expert] opinion" and "simply proclaimed [the defendant's] innocence without forming any expert conclusion." *See United States v. Gilmore*, 837 Fed.Appx. 101, 104 (3d Cir. 2020).  There, the Third Circuit affirmed the trial court's ruling granting the government's motion *in limine* to exclude the defense expert, in part, because the probative value of the otherwise inadmissible "facts" memorialized in the expert's report did not substantially outweigh their prejudicial effect. Examples of the hearsay statements, which the report conveyed as facts, include: "He told me he would never dream of hiding income tax or taking any other illegal steps to evade taxes" and "He told me he has never filed a false tax return." *Id.*  The Third Circuit agreed with the district court that "dressing up [the defendant's] statements in the guise of expert opinion does not render such statements—or the expert opinion itself—admissible." *Id.*

test to "exclude relevant evidence if its probative value is substantially outweighed by a danger of [any] of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Mindful of these rules and the relative impediment of applying them with any certitude pretrial, the Court considers, in turn, each of the government's objections to Asher's proposed testimony.

II.

A.

As a threshold matter, the Court underscores that the government does not challenge Asher's proposed testimony or qualifications under Rule 702/*Daubert*.[4] To be sure, wholesale exclusion of expert testimony is "'the exception rather than the rule.'" *United States v. Perry*, No. 17-30610, 2022 WL 1498953, --- F.4th ---, at *14 (5th Cir. May 12, 2022)(quoting Fed. R. Evid. 702 advisory committee's notes (2000)). Absent a *Daubert* challenge, the Court's (mandatory, if perfunctory) gatekeeping *Daubert* inquiry is pretermitted to trial. *See id.* at *13.

B.

Though it only specifically challenges a handful of proposed statements by defense expert Asher, the government contends that "most of" Asher's proposed testimony is inadmissible for three reasons and it finally argues that, even if it is admissible, perhaps all of it should be excluded for a fourth reason, as follows: (1) the proposed testimony (specifically contained in revised report paragraphs 14, 15, and 21) improperly comments on the defendants' *mens rea*; (2) the proposed testimony (contained in paragraph 15) seeks to introduce the defendants' self-serving hearsay statements through a third-party witness; (3) the proposed testimony (contained in paragraphs 31 and 38) invades the province of the jury by directing conclusions as to witness credibility; and (4)

---

[4] *See* Minute Entry dtd. 6/10/22 at Rec.Doc. 329 (20cr55) and Rec.Doc. 198 (20cr139).

finally, even if the proposed testimony is relevant and admissible, the government argues that it fails the Rule 403 balancing test.

    1. Whether Asher's "Reasonable Reliance" Opinion Violates Rule 704(b).

First, the government contends that Asher's proposed testimony that the defendants reasonably relied upon Timothy is improper. Specifically, the government challenges paragraphs 14, 15, and 21 of Asher's revised expert report and argues that Asher's comments on the defendants' mental states violate Rule 704(b). The defendants counter that Asher's proposed testimony concerning reasonable reliance on a tax preparer does not directly state that the defendants lacked culpable mental states and thus complies with Rule 704(b) and *Dotson*.

*Dotson* illustrates that context is critical to resolve whether an expert's opinion is permissible evidentiary summary testimony or an impermissible direct statement regarding a defendant's intent. Under the heading "Reasonable Reliance Upon the Advice of a CPA," the revised report at paragraphs 1-13 summarizes Asher's opinions concerning the utility offered by Certified Public Accountants in general in preparing reliable tax returns in accordance with CPA standards and in offering tax-saving opportunities for taxpayers; describes the American Institute of Certified Public Accountants' statements on standards for tax services and enforceable tax practice standards for CPAs; cites documentary exhibits, noting that Timothy represented to various tax clients (including Mr. Williams and Ms. Burdett) that he was a CPA (when, in fact, he was not a CPA); and summarizes regulations governing practice before the IRS. At paragraphs 14 and 15, Asher states the three requirements articulated by the Tax Court and the IRS for establishing reasonable reliance on professional advice and his opinion and conclusion reached after applying these requirements to the facts of this case:

> 14. The Tax Court and the IRS have stated that three basic requirements for establishing reasonable reliance on professional advice is as follows:

      a. The professional is a competent tax advisor with sufficient expertise to justify reliance.

      **If Mr. Timothy represented himself to Mr. Williams and Ms. Burdette [sic] as a CPA who was required to comply with the CPA tax preparation standards and had sufficient expertise to justify reliance, it would be reasonable for Mr. Williams and Mrs. Burdette to rely upon his advice.**

      b. The taxpayer provided necessary and accurate information to the advisor.

      My opinion is that Mr. Williams and Mr. [sic] Burdett provided sufficient information to Mr. Timothy because the U.S. has used the same information provided by Mr. Williams and Ms. Burdett to Mr. Timothy as their source for determining the claimed revised taxable income for the years at issue in this matter.

      c. The taxpayer actually relied in good faith on the advisor's judgment.

      The IRS states that its examiners must consider the taxpayer's education, sophistication and business experience as being relevant.

      As in <u>CNT Investors, LLC v. Commissioner</u>, Mr. Williams and Ms. Burdett were lawyers. However, as the Tax Court found there **and as present in this matter, being a lawyer who has taken a single tax course in 1996 is not equivalent to tax expertise.** Attorneys reasonably rely upon the advice of their tax return preparer to accurately prepare their income tax returns.

15. Conclusion – **Mr. Williams and Ms. Burdett reasonably relied upon Mr. Timothy** in connection with the income tax returns at issue as summarized below:

      a. **Mr. Williams and Ms. Burdett sought the advice of Mr. Timothy whom they believed to be a sufficiently skilled CPA who would apply the applicable professional CPA and tax preparer standards in connection with preparing income tax returns that were in compliance with the applicable tax laws and regulations.**

      b. **Mr. Williams and Ms. Burdett provided full and complete information to Mr. Timothy which included all the necessary documents, support and facts needed by Mr. Timothy to prepare tax returns that were in compliance with the applicable tax laws and regulation.**

      c. Mr. Williams and Ms. Burdett filed the returns as prepared by Mr. Timothy.

Rec.Doc. 310-2 (20cr55) and Rec.Doc. 186-2 (20cr139), Asher's Revised Report (emphasis added to those paragraphs which the government challenges: portions of 14(a) and (c); 15, 15(a) and (b)).

Asher then turns to consider, "Documents Provided by Williams and Burdett," in paragraphs 16-23, with his opinion at paragraph 24. The government challenges paragraph 21, which is emphasized for ease of reference:

> 16. As reflected in my Curriculum Vitae, I have been a Certified Fraud Examiner since 1995 and have been involved in numerous fraud related matters.
>
> 17. In my experience in fraud related matters, the perpetrators generally destroy documents evidencing the fraudulent conduct.
>
> 18. There are ample tax software alternatives that individuals can use to prepare their own tax returns rather than going to a return preparer.
>
> 19. Mr. Timothy overstated Mr. Williams' and Ms. Burdett's revenues for the years at issue.
>
> 20. It is unlikely that individuals engaging in tax fraud would have overstated their revenues for years at issue.
>
> 21. **The facts that Mr. Williams and Ms. Burdett kept their records for all relevant years, used and relied upon a tax preparer and overstated their revenues are indicators that their actions were not fraudulent for the years at issue.**
>
> 22. Mr. Williams and Ms. Burdett provided Mr. Timothy the same records that the U.S. used to determine what they claim to be the appropriate income.
>
> 23. Mr. Williams and Ms. Burdett provided Mr. Timothy with summary and detailed revenue and expense support and cash receipts disbursements activity for the relevant years. Any taxpayer would expect their tax return preparer to prepare their income tax returns in compliance with the Internal Revenue Code based upon the tax preparers due diligence and analysis of the records that they provided.
>
> 24. Conclusion - As stated above, Mr. Williams and Ms. Burdett maintained and provided sufficient records for a competent tax return preparer to perform adequate due diligence and analysis for use in preparing accurate, reliable and tax compliant income tax returns.

The government submits that Rule 704(b) precludes admission of the above-emphasized statements by Asher. The defendants counter that Asher's challenged statements and conclusions (reached after he sets forth the supporting facts)—namely, that "Mr. Williams and Ms. Burdett

reasonably relied upon Mr. Timothy in connection with the income tax returns at issue"—are far narrower than that offered by the expert in *Dotson*.[5] Subject to Asher's testimony remaining focused on facts as *Dotson* instructs, the Court defers resolution of specific objections to trial with the following guidance.

Paragraph 14(a) is phrased conditionally and falls clearly within the scope of permissible expert testimony. Respecting the third requirement for establishing reasonable reliance in paragraph 14(c), Asher's opinion that "being a lawyer who has taken a single tax course in 1996 is not equivalent to tax expertise" likewise does not appear to offend Rule 704(b); however, Asher's particular expertise in this regard or the statement's helpfulness to the jury is not conspicuously apparent. As for paragraphs 15(a), 15(b), and paragraph 21, insofar as Asher's proposed testimony concerning the ultimate issue—reasonable reliance on a tax preparer professional—is offered in the context of and tethered to facts from permissible sources, at first blush it would appear that the government fails to demonstrate how Rule 704(b) or *Dotson* is violated.[6] However, the Court registers its concern, particularly with respect to paragraph 15— "Mr. Williams and Ms. Burdett reasonably relied upon Mr. Timothy"—that this is a direct statement on the ultimate issue of the defendants' *mens rea*. The admissibility call for paragraph 15 (including (a) and (b)) would be more clearly in the defendants' favor were Asher's opinion stated in conditional terms, as it is in paragraph 14(a).[7] Asher may offer his opinions so long as

---

[5] The government does not respond to this argument.

[6] Like the "borderline" but permissible opinion admitted in *Dotson*, Asher in paragraph 21 considers three "facts" and determines that these "are indicators" that the defendants' conduct was not fraudulent. Testimony concerning what certain facts indicate respecting intent appears to comply with *Dotson*'s gloss on Rule 704(b). Again, however, Asher's proposed testimony would be more clearly on the admissible side of the *Dotson* line if he were to assume the existence of the "facts" as stated (i.e., condition his finding to *assuming that* the taxpayers, Jason Williams and Nicole Burdett, kept their records for all the relevant years; otherwise, this fact itself presents the same potential problem as indicated by the government's Rule 802/703 challenge to paragraphs 15(a) and (b), considered below).

[7] For example, paragraph 15(a) begs the question: how does Asher know that the defendants believed Timothy to be a sufficiently skilled CPA? Similarly, paragraph 15(b) begs an additional question: how does Asher know that the defendants "provided full and complete information" to Timothy? As indicated below, defense counsel contends that Asher will not testify "I heard from the defendants" as to these facts. This persuades the Court to defer this issue to

11

those opinions are offered in the context of factual indicators (or conditional assumptions in the absence of facts) forming the basis of his opinion and so long as he does not offer an impermissible direct statement of the defendants' (lack of) willfulness.

Asher will not be permitted to draw for the jury the ultimate conclusion—in the case of a defense expert, as here, that the defendants reasonably relied on Asher. But, as *Dotson* instructs, Rule 704(b) is not strictly construed: where an opinion is on the borderline between permissible and impermissible, if the testimony is more akin to a summary focused on tying *facts* to a conclusion, such testimony is admissible. Insofar as Asher's statements concerning reasonable reliance, record-keeping, and documents provided to the tax preparer (whom, according to exhibits cited by Asher in his report, held himself out to be a CPA) remain focused on facts and the questions by defense counsel are properly phrased, he will be permitted to testify based on his specialized experience as to what he believes the facts might indicate. Not knowing precisely how Asher's direct examination testimony will develop, the Court opts for this guidance and otherwise defers to trial resolution of this Rule 704(b) issue.

2. Whether Asher's Statements—that Timothy Purported to Be a CPA and that Defendants Provided Complete Information to Timothy—Violate Rule 802.

Second, the government contends that Asher's proposed testimony in paragraphs 15(a) and (b) additionally violates Rule 802 because "the only source on which Asher could rely to form this opinion [i.e., that the defendants believed Timothy was a CPA and that defendants provided complete information to Timothy] are the defendants' self-serving [out-of-court] statements." If the defendants want their version of events in evidence, the government argues, they must take the

---

trial. Nevertheless, the Court cautions that, if Asher's sources or bases for either (i) the *defendants' beliefs* regarding Timothy's professional competence, or (ii) his *characterization* for the type and extent of information provided to Timothy, are the defendants themselves, then it seems that Asher's testimony on these particular "facts" must be phrased conditionally to comply with the evidence rules, particularly in order to remain faithful to the touchstone of helpfulness articulated in Rule 702.

12

stand and be subject to cross-examination; they are not permitted to use Asher as a conduit through which hearsay testimony is presented to the jury.

The defendants counter that Asher will <u>not</u> testify "I heard from [the defendants]" that they believed Timothy to be a CPA, nor will Asher testify that he took the defendants' word for it that they provided complete information to Timothy; rather, the defendants contend that Asher has relied on permissible materials and indeed cited to those materials in his revised report. In particular, the defendants explain that Asher has reviewed the documents produced by the government in discovery and that those documents are what the defendants provided to Timothy. It is not hearsay, defendants submit, for Asher to look at the QuickBooks reports provided to Timothy and to opine that this information was sufficient for a CPA to accurately prepare tax returns.

The defendants appear to concede that Asher may not testify as to facts or information he learned *solely* from out-of-court statements by the defendants. Assuming, as the defendants suggest—that it will be demonstrated prior to or during Asher's examination that he relied upon sources permitted by Rule 703 and that the Rule 703 balancing test, if implicated, will favor the defense arguments—the Court would agree that the proposed testimony neither offends Rule 703 nor implicates Rule 802. To resolve the issue at this juncture requires speculation.[8] The Court thus defers this issue to trial.

3. Whether Asher's Proposed Testimony Improperly Comments on Timothy's Credibility.

The government next contends that Asher's proposed testimony (contained in paragraphs 31 and 38) invades the province of the jury by making conclusions as to witness credibility. The

---

[8] The government does not respond to the defendants' explanation regarding Asher's purported source or bases for his expected paragraph 15 testimony. Because the government fails to specifically contend with the defendants' response, the Court is left with a "no, it doesn't/yes, it does" contest, which perhaps a developed trial record will resolve. Regardless, defense counsel shall be mindful of footnote 7's caveat.

trier of fact has the capacity (indeed, the duty) to make its own credibility determinations, thus, the government submits, expert testimony regarding a witness's credibility is unnecessary and Asher may not opine on Timothy's potential bias; rather, Timothy's motive or bias may be explored during Timothy's cross-examination. That Timothy was investigated, prepared tax returns for himself and his clients inappropriately, and is subject to tax preparer penalties—the defendants counter—is not improper credibility testimony because Asher focuses on facts and does not expressly state that Timothy is not a credible witness.[9]

Although the government's Rule 702 challenge targets as objectionable only paragraphs 31 and 38 of Asher's revised expert report (emphasized below), again, to assess whether the proposed testimony violates Rule 702, context is helpful.

In paragraphs 28-32, under a heading entitled "Timothy Treated Williams and Burdett in the Same Way that He treated All His Clients and Himself," Asher analyzes an IRS-prepared exhibit summarizing Timothy-prepared client tax return information and Timothy's own (self-prepared) tax returns and concludes that "[t]here are numerous indicators that Mr. Timothy routinely understated the taxable income for hundreds of taxpayers (including himself) for the years at issue." In paragraph 31, Asher states "The U.S. investigated [C.D.] and determined Mr. Timothy prepared the [C.D.] tax returns inappropriately. **However, the U.S. chose not to prosecute [C.D.] or Mr. Timothy in connection with these misrepresentations.**" In paragraphs 33-39 under "Timothy Violations," Asher summarizes the penalties to which tax return preparers are subject under the Internal Revenue Code, notes at paragraph 38 that "**Mr. Timothy is subject to hundreds of thousands of dollars in tax preparer penalties and may be subject to imprisonment**," and concludes at paragraph 39 that "Timothy prepared in [sic] income tax returns

---

[9] Again, the government offers no reply to the defendants' arguments.

for Mr. Williams and Ms. Burdett no differently than Timothy did for hundreds of other clients and for himself."

The government singles out the above-emphasized testimony as improperly invading the credibility-discerning function of the jury. As for Asher's statement that "the U.S. chose not to prosecute [C.D.] or Mr. Timothy in connection with these misrepresentations," regardless of whether this contravenes the touchstone of helpfulness,[10] the phrasing of this statement ("*the U.S. chose not to prosecute*...") renders it inadmissible for a reason previously provided by the Court: it violates this Court's prior ruling that evidence or argument regarding selective prosecution would not be permitted because it is not for the jury (but, rather, for the Court) to decide issues relative to selective prosecution. *See* Rec.Doc. 326 (granting as unopposed the government's motion *in limine* to preclude evidence or argument regarding grounds asserted in the defendants' motions to dismiss the indictment).[11] This prior ruling precludes Asher's proposed testimony concerning the government's (vast) prosecutorial discretion.

As for Asher's statement that "Mr. Timothy is subject to hundreds of thousands of dollars in tax preparer penalties and may be subject to imprisonment," the government concludes that the testimony would not help the jury understand the evidence or determine a fact in issue and is purely an opinion about Timothy's potential bias or credibility. The defendants counter that Asher offers facts and does not directly pass judgment on Timothy's truthfulness.

The proffered penalties opinion gives the Court pause. On the one hand, the Court agrees with the government that an opinion regarding adverse consequences for Timothy's conduct as a

---

[10] In fact, Asher's statement would not assist the jury. As a factual matter, such testimony will certainly be elicited during Timothy's testimony. Furthermore, there are numerous reasons the government chooses to prosecute a case and having a mini-trial focused on decisions not to prosecute other Timothy clients would violate Rule 403.

[11] In addition to the fact that selective prosecution is not a jury-issue, defense counsel has indicated that it did not and does not intend to seek to admit evidence regarding selective prosecution. *See id.* Presumably, then, this particular sentence in paragraph 31 is ostensibly a non-issue because the defendants do not intend to elicit such testimony.

tax preparer in general principally tends to probe Timothy's potential motive, bias or credibility (best left to Timothy's cross-examination). On the other hand, Asher does not directly state that Timothy is incredible and, in the broader context of Asher providing information concerning tax return preparer penalties in general, Asher's statement might be helpful to understanding the evidence concerning tax preparer standards of conduct. Ultimately, however, paragraph 38's focus on a tax preparer's penalty exposure most probably exceeds the scope of Asher's admissible expert testimony and fails to assist the jury insofar as it strays from the critical fact in issue, which is *the defendants'* reasonable reliance or willful conduct in the preparation of Jason Williams's tax returns (or, in the case solely against Nicole Burdett, her reasonable reliance or willful conduct relative to her own returns). Although the admissibility of this proffered opinion seems dubious, the Court will defer this issue to trial: whether the scope of Asher's testimony permissibly may include opinion regarding a third-party tax preparer like Timothy's penalty exposure.

4. Whether Asher's Testimony Should Be Excluded Under Rule 403.

Finally, the government submits that the critical issue for the jury to resolve is simple and an expert is not necessary to help it understand whether the defendants willfully engaged in tax fraud or reasonably relied on Timothy to prepare their tax returns. Accordingly, the government urges the Court to exclude Asher's proposed testimony, presumably *in globo*, because it would confuse the issues and mislead the jury in violation of Rule 403. The defendants counter that Asher's proposed testimony is probative and points out that the government fails to identify how it would confuse the issues or mislead the jury. At this pretrial juncture, the Court agrees.

Notably, the government does not directly challenge Asher's expertise or the prospect of its potential helpfulness to the jury. And it fails to explain how Asher's testimony might confuse issues or mislead the jury. The Court finds that some testimony by Asher (again, whose expertise

16

is not contested), limited in scope, concerning third party tax preparer standards (and the attendant potential reasonableness of taxpayer reliance) is indeed relevant, admissible, and has nontrivial probative value such that it would be helpful to the jury. Mindful of "the difficulties of making Rule . . . 403 assessments in the vacuum of pretrial review," *United States v. Williams*, 30 F.4th 263, 269 (5th Cir. 2022), the Court defers to trial any specific finding as to whether the probative value of the challenged portions of Asher's proposed testimony may be substantially outweighed by the dangers of confusing the issues, misleading the jury, etc. The Court will resolve any Rule 403 balancing issues on a developed trial record.

Accordingly, for the foregoing reasons, the government's renewed motion *in limine* to exclude defense expert is hereby **GRANTED in part, DENIED in part, and DEFERRED to trial, in part,** as set forth herein.

New Orleans, Louisiana, this 13th day of June, 2022.

HONORABLE LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE