**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                   **No. 20-139**

**NICOLE BURDETT**                                       **SECTION I**

## ORDER & REASONS

Before the Court is defendant Nicole Burdett's ("Burdett") motion[1] for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. For the following reasons, the Court denies the motion.

## I. FACTUAL BACKGROUND

Burdett was convicted at trial of four counts of making and subscribing a false and fraudulent income tax return in violation of 26 U.S.C. § 7206(1).[2] Each of the four counts represents a single tax year: 2014 (Count 1), 2015 (Count 2), 2016 (Count 3), and 2017 (Count 4).[3] Burdett timely moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) and the Court reserved its decision. Burdett contends that the evidence is insufficient to support her convictions.

---

[1] R. Doc. No. 283.

[2] R. Doc. No. 268.

[3] Burdett was acquitted of one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371, five counts of aiding and assisting in the preparation and filing of false and fraudulent tax returns for codefendant Jason Williams ("Williams") in violation of 26 U.S.C. § 7206(2), and four counts of failing to file Forms 8300 relating to cash received in a trade or business. These offenses were charged in a separate indictment. *United States v. Williams et al.*, E.D. La. Case No. 20-55, R. Doc. Nos. 1, 421.

At trial, the government offered two theories as to how Burdett's tax returns for the charged years were false. The first, the "head of household theory," was that Burdett used the head of household filing status, and thereby obtained tax benefits, even though that filing status was legally unavailable to her. The second, the "Schedule C theory," was that Burdett claimed personal expenses as business expenses, inflated actual business expenses, and fabricated business expenses on her Schedule C forms for the charged years, thereby reducing her tax liability. Both theories were presented to the jury. Prior to the case being submitted to the jury, and prior to the verdict, neither party requested a jury poll or jury interrogatory as to which theory the jury accepted or rejected.[4]

Burdett's tax preparer for the relevant years, Henry Timothy ("Timothy"), testified at trial. Timothy, who falsely represented himself as a CPA even though he was not properly licensed, had already pleaded guilty to one count of making and subscribing a false tax return on his own behalf in violation of 26 U.S.C. § 7206(1).[5] Timothy also prepared Williams' tax returns. At trial, Timothy admitted to preparing Burdett's tax returns with the head of household status, even though he believed it was unavailable to her, as well as to falsely stating Schedule C business expenses on her tax returns.

---

[4] Defense counsel made an untimely request for a jury poll subsequent to the verdict being returned.

[5] *United States v. Timothy*, E.D. La. Case No. 20-99, R. Doc. Nos. 1, 21, 23 (Fallon, J.).

## II. LEGAL STANDARDS

### a. Rule 29 Judgment of Acquittal

"A motion for judgment of acquittal challenges the sufficiency of the evidence to convict." *United States v. Lopez-Monzon*, 850 F.3d 202, 206 (5th Cir. 2017) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)). A review of the sufficiency of the evidence is "highly deferential" to the jury's verdict, and all reasonable inferences and credibility choices are to be made in support of conviction. *United States v. Isgar*, 739 F.3d 829, 835 (5th Cir. 2014). The reviewing court "must assume that the evidence offered by the prosecution is true." *Lopez-Monson*, 850 F.3d at 206 (citing *United States v. Rojas Alvarez*, 451 F.3d 320, 326 (5th Cir. 2006)). The jury's verdict will be affirmed unless no rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt. *United States v. Beacham*, 774 F.3d 267, 272 (5th Cir. 2014) (citations omitted). Even so, the government must present evidence "allow[ing] the jury 'to find every element of the offense beyond a reasonable doubt,'" and "'must do more than pile inference upon inference' to sustain a conviction." *United States v. Vargas*, 6 F.4th 616, 622 (5th Cir. 2021) (quoting *Rojas Alvarez*, 451 F.3d at 333, then quoting *United States v. Maseratti*, 1 F.3d 330, 337 (5th Cir. 1993)).

When considering a motion for judgment of acquittal, the reviewing court "only ascertains whether the jury made a 'rational decision,' not 'whether the jury correctly determined guilt or innocence.'" *United States v. Zamora-Salazar*, 860 F.3d 826, 832

(5th Cir. 2017) (quoting *Lopez-Monzon*, 850 F.3d at 206). "To uphold the conviction, there is no requirement that the evidence exclude every possible 'hypothesis of innocence.'" *Id.* "[A]ny conflict in the evidence must be resolved in favor of the jury's verdict." *United States v. Bates*, 850 F.3d 807, 810 (5th Cir. 2017) (quoting *United States v. Lundy*, 676 F.3d 444, 448 (5th Cir. 2012)). "If the jury was presented with sufficient evidence to support its verdict, the verdict must be upheld." *Zamora-Salazar*, 860 F.3d at 832.

Where the government offers multiple theories as to the defendant's guilt, the verdict will be upheld if there is sufficient evidence as to one of those theories, even if the evidence is insufficient to support the other theory.[6] *United States v. Garza-Robles*, 627 F.3d 161, 166 (5th Cir. 2010) (citing *Griffin v. United States*, 502 U.S. 46, 59–60 (1991)). "[S]ubmission to the jury of a *factually* inadequate theory does not require vacating a conviction that was supported by at least one alternate and adequate theory." *United States v. Howard*, 517 F.3d 731, 737 (5th Cir. 2008)

---

[6] The jury was instructed that the government needed only to prove one of these theories, but that the jury needed to unanimously agree on which of the theories was proven beyond a reasonable doubt if it found Burdett guilty:

> The government does not have to prove both that the defendant falsely represented her head of household status and that the defendant falsely stated Schedule C expenses for you to return a guilty verdict on counts 1 through 4. Proof beyond a reasonable doubt with respect to one of the alleged false representations is enough. But in order to return a guilty verdict, all of you must agree that the same one has been proved. All of you must agree that the government proved beyond a reasonable doubt that the defendant falsely misrepresented her head of household status; or, all of you must agree that the government proved beyond a reasonable doubt that the defendant falsely stated Schedule C business expenses.

R. Doc. No. 265-2 (Jury Instructions), at 43–44.

(emphasis added) (citing *Griffin*, 502 U.S. at 59–60)). In contrast, the Fifth Circuit has held that a conviction should be vacated when it is unclear whether it rests "on *legally* valid or invalid bases." *Id.* at 736, 737 n.5 (citing *Griffin*, 502 U.S. at 59) (emphasis added).

Burdett does not contend that either one of the theories presented by the government was legally inadequate. Since the jury was not polled as to which theory it accepted, the verdict must therefore be upheld if either theory is supported by sufficient evidence. *See United States v. Gonzales*, 841 F.3d 339 (5th Cir. 2016).

### b. Elements of the Offense

For each § 7206(1) conviction, the government had to provide evidence allowing a reasonable jury to conclude, beyond a reasonable doubt, that Burdett's conduct satisfied each of the following elements: (1) that Burdett "signed an income tax return that contained a written declaration, made under penalties of perjury," (2) that "Burdett falsely stated that she was head of household and/or falsely stated Schedule C business expenses," (3) that "Burdett knew the statement was false," (4) "that the false statement was material," and (5) that "Burdett made the statement willfully."[7]

To prove that Burdett acted willfully, a term defined in detail in the jury instructions, the government was required to prove the absence of good faith.[8] Further, since good faith reliance on a tax preparer is a defense to a § 7206(1) charge, the jury was instructed that if Burdett relied on Timothy, provided full and complete

---

[7] *Id.* at 42–44.

[8] *Id.* at 27.

information to him, and in good faith without knowing that the returns contained false statements, adopted, signed, and filed the tax returns, it must find her not guilty.[9] The jury instructions further stated that if the jury found "that the defendant did not provide full and complete information to Henry Timothy, or that the defendant knew that the return as prepared by [him] contained false statements, then" it could find Burdett guilty even though she did not prepare the returns herself.[10]

## III. DISCUSSION

### a. Henry Timothy's Testimony

The testimony by Timothy, Burdett's tax preparer for the relevant years, is central to several of Burdett's arguments. The Court therefore first addresses the question of whether, as Burdett contends,[11] Timothy's testimony was so unreliable as to support a conviction in light of the fact that portions of it lacked corroborating evidence.

At trial, Timothy testified that he significantly under-reported his income on his own taxes,[12] pleaded guilty to a felony federal tax charge,[13] and agreed to cooperate with the government and testify against Burdett as part of his plea

---

[9] *Id.* at 44−45.

[10] *Id.* at 45.

[11] R. Doc. No. 283-1, at 7.

[12] R. Doc. No. 277 (Timothy Transcript 2), at 38:19–39:7

[13] R. Doc. No. 276 (Timothy Transcript 1), at 12:11–13:3; *see also supra* note 5.

agreement.[14] He admitted to lying to his clients,[15] to a federal agent,[16] to an assistant U.S. Attorney,[17] to a state court,[18] and to a grand jury.[19]

Timothy stated under oath in connection with civil litigation that, when he prepared Burdett's returns, he believed them to be "appropriate and consistent with law,"[20] but in Burdett's criminal trial he testified that he knew them to be false.[21] He also testified that he would provide her with marked-up profit and loss statements indicating which expenses he had included on her Schedule C.[22] He further stated that he would provide Burdett with copies of her returns before filing them.[23] However, Burdett offered text messages between herself and Timothy that suggested she retrieved the returns from his office after he filed them.[24] Timothy also testified that he would prepare draft tax returns for Williams and Burdett, and that he "would go back and forth" with Burdett about "the final number" before he filed the returns.[25]

---

[14] R. Doc. No. 276, at 17:14–21:1.

[15] R. Doc. No. 277, at 40:3–:6.

[16] *Id.* at 56:6–:16.

[17] *Id.* at 107:10–:22.

[18] *Id.* at 44:16–45:2.

[19] *Id.* at 40:23–41:3.

[20] *Id.* at 44:16–45:2; Def. Ex. 225.

[21] R. Doc. No. 276, at 64:17–:20, 150:24–151:4.

[22] *Id.* at 130:6–:15.

[23] R. Doc. No. 277, Timothy Tr., at 132:10–:11.

[24] R. Doc. No. 283-2, at 14–23; Def. Ex. 7, at 14, 25, 51.

[25] R. Doc. No 277, 130:16–131:14. When asked about Williams' tax returns, Timothy also testified that, after Timothy prepared the first draft return, Burdett would ask him if he "could go lower" and that he would then further inflate the Schedule C deductions. R. Doc. No. 276, at 63:22.

He admitted that he had no documented correspondence with Burdett that corroborated his testimony about these conversations.[26]

First, the Court notes that the Fifth Circuit has warned against second guessing a jury's credibility determination when considering whether there was sufficient evidence supporting a conviction. *E.g.*, *United States v. Perry*, 35 F.4th 293, 317 (5th Cir. 2022) ("[W]e defer to the credibility determinations of the jury, and we reject challenges to the sufficiency of the evidence based solely upon such credibility determinations."); *United States v. Collins*, 243 F. App'x 56, 58 (5th Cir. 2007) (per curiam) ("The jury was presented with substantial evidence of [the witness'] poor character and was made aware of the contradictions in his testimony . . . . The district court erred in substituting its own judgment for that of the jury to conclude that [the witness'] testimony should be disregarded.")

"[T]he testimony of a single witness is sufficient proof of a fact." *United States v. Hoffman*, 901 F.3d 523, 546–47 (5th Cir. 2018). The Fifth Circuit has held that a jury's acceptance of uncorroborated testimony by an alleged coconspirator testifying in exchange for a benefit should only be rejected if it "relates to facts that the witness[ ] could not possibly have observed or to events which could not have occurred under the laws of nature." *Perry*, 35 F.4th at 317 (quoting *United States v. Booker*, 334 F.3d 406, 410 (5th Cir. 2003)) (quotations and further citations omitted). While, as Burdett points out,[27] she was not charged with conspiring with Timothy, the Fifth

---

[26] R. Doc. No. 277, at 25:21–26:2.
[27] R. Doc. No. 299, at 5.

8

Circuit has applied this rule to non-coconspirator testimony. *Hoffman*, 901 F.3d at 547 (allowing conviction to stand when an element was supported only by a single, non-coconspirator witness's testimony, and stating that this principle applies "*even when* that testimony is from an accomplice testifying in exchange for a benefit" (emphasis added)). Furthermore, the fact that Timothy was not formally charged as a conspirator does not lead to the conclusion that he did not conspire with Burdett.

Burdett still urges that Timothy's uncorroborated testimony, without more, cannot support her convictions.[28] Specifically, Burdett argues that Timothy's testimony that he had Burdett review the returns before he filed them is uncorroborated by documentary evidence, and contradicted by text messages suggesting that Burdett picked up the returns after they were filed.[29] Of course, other portions of Timothy's testimony—most importantly, his testimony regarding claiming the head of household filing status for Burdett and inflating her Schedule C expenses—are corroborated by the documentary evidence of Burdett's tax documents. Further, as the government points out,[30] a court may not grant a Rule 29 motion for

---

[28] In her reply in support of her motion, Burdett cites three cases in support of her contention that the Court can require further corroboration of Timothy's testimony. *Id.* In the first, *United States v. Hemen*, a district court discussed witness credibility mainly in the context of a Rule 33 motion for a new trial, ultimately granting the defendant a new trial and denying the motion for judgment of acquittal as moot. 202 F. Supp. 3d 629, 639, 644 (E.D. Tex. 2016). In the second, *United States v. Rojas-Alvarez*, the Fifth Circuit discussed corroboration in the context of an anonymous tip. 451 F.3d at 332–33. In the third, *United States v. Bowen*, the judgment of acquittal was independently justified based on the fact that the government abandoned its defense of the relevant count. No. 10-204, 2011 WL 13177518, at *2 (E.D. La. Oct. 20, 2011) (Engelhardt, J.).

[29] R. Doc. No. 283-2, at 14–23.

[30] R. Doc. No. 295, at 19.

judgment of acquittal solely on witness credibility concerns. *E.g.*, *Perry*, 35 F.4th at 317; *Hoffman*, 901 F.3d at 547.

To be sure, Timothy's testimony was tainted by his history of untruthfulness. But the jury was well aware of Timothy's shortcomings as a witness, and it appears to have nevertheless accepted relevant portions of his testimony. The Rule 29 standard is deferential to that determination. Timothy's testimony neither "relate[d] to facts that [he] could not possibly have observed" nor recounted "events which could not have occurred under the laws of nature." *Perry*, 35 F.4th at 317. The Court therefore will not reject, nor require corroboration for, those portions of Timothy's testimony that the jury appears to have credited.

### b. Signing Element (Count I)

Burdett asserts that the government failed to introduce evidence that she signed the 2014 tax return, and that it therefore did not prove the first element of the offense as to Count 1.[31] For each of tax years 2015,[32] 2016,[33] and 2017,[34] the government introduced a signed "IRS *e-file* Signature Authorization," or "Form 8879." A taxpayer who signs a Form 8879 verifies under penalty of perjury that their tax returns are true and complete, and gives permission to a designated third-party tax preparer to file their returns with the IRS.[35] The government did not introduce a

---

[31] R. Doc. No. 283-1, at 11–13.

[32] Gov't Ex. 161.

[33] Gov't Ex. 162.

[34] Gov't Ex. 165.

[35] Gov't Exs. 161, 162, 165.

Form 8879 for tax year 2014, but it did introduce Burdett's 2014 tax returns, which bear Burdett's taxpayer personal identification number ("PIN") in lieu of a traditional signature.[36]

The government argues that there is sufficient evidence to prove the signing element as to Count 1 because it introduced evidence that Timothy had prepared and filed returns for Burdett and her husband since 2010,[37] that Burdett authorized the filing of the returns for tax years 2015 through 2017 via Form 8879,[38] and "that Burdett's 2014 taxes were filed electronically using the practitioner PIN method," which "is recognized by the IRS as a legal signature for all purposes both civil and criminal, including penalties for perjury."[39]

The government cites two cases in support of its argument. In the first, *United States v. Ponder*, 444 F.2d 816 (5th Cir. 1971), the defendant appealed a conviction for making false income tax returns, arguing, in relevant part, that he should have been "granted a judgment of acquittal for lack of proof that the returns were signed by [him], or authorized to be signed on his behalf." *Id.* at 822. However, the facts in *Ponder* differ significantly from those presented here. Timothy prepared Burdett's returns in his own office, away from Burdett's direct supervision,[40] and Burdett was

---

[36] Gov't Ex. 50, at 3.

[37] R. Doc. No. 295, at 5.

[38] *Id.*

[39] *Id.* at 6.

[40] *See* R. Doc. No. 276, at 63:9–:10 (indicating that Burdett "would come pick up the tax returns" from Timothy).

not under IRS investigation when her 2014 returns were filed. Furthermore, as *Ponder* is over fifty years old, it does not shed light on the use of the PIN method.

In the second case cited by the government, *United States v. Frye*, 770 F. App'x 137 (4th Cir. 2019) (per curiam), *cert. denied*, 140 S. Ct. 603 (2019), the defendant, also convicted of filing false tax returns in violation 26 U.S.C. § 7206(1), contended that "the mere entry of [defendant's] personal identification number (PIN) is insufficient to show that she signed her return because Form 8879, the form authorizing e-filing, was unsigned." *Id.* at 139. The defendant further argued that her tax preparer, not the defendant herself, signed the return. *Id.* The court concluded that "a rational juror could conclude that the presence of [defendant's] PIN, a unique identifier, on her return was sufficient to show that Frye signed her return." *Id.*

The Court also notes that the Sixth Circuit has rejected a defendant's argument for judgment of acquittal based on the fact that "the record d[id] not contain a Form 8879 for [the charged] tax years." *United States v. Lawrence*, 557 F. App'x 520, 529−30 (6th Cir. 2014), *cert. denied*, 574 U.S. 871 (2014). In doing so, the court noted that "[t]he IRS treats a PIN as an electronic signature" and that a PIN is "a unique personal identifier, similar to a handwritten signature." *Id.* at 530 (citing 26 U.S.C. § 6061(b)).

The Court is persuaded that the presence of Burdett's PIN on the 2014 return, in combination with Timothy's testimony that he prepared Burdett's tax returns for tax years 2010 through 2017[41] and the government's documentary evidence that she

---

[41] *Id.* at 47:5–:7; 58:16–:18.

provided him with relevant financial information for 2014,[42] provides sufficient evidence from which to conclude that Burdett signed the 2014 tax return. The Court therefore concludes that a reasonable jury could conclude that Burdett signed the 2014 tax return within the meaning of § 7206(1) even though the government did not offer a signed Form 8879 for that tax year at trial.

### c. Head of Household Theory (All Counts)

### i. Falsity

Burdett argues that there is insufficient evidence to support the head of household theory because the government did not introduce evidence showing that the head of household status claimed on her taxes was false.[43] Her tax returns for all of the charged years claimed the head of household status, but she directed Timothy to amend her 2012 return to change her filing status to married filing separately.[44] Timothy testified that she wanted to amend the 2012 return to make it consistent with the information her stepdaughter had listed on her  Free Application for Federal Student Aid ("FAFSA").[45] Timothy testified that, after Burdett requested he amend

---

[42] Gov't Ex. 246 (envelope labeled "2014," with notes indicating that Burdett had traded in her car that year, stating the schools Burdett's children attended, and information regarding Burdett's health insurance, in addition to a note reading "Docs inside"). Timothy testified that, for each year in which Burdett authorized him to do her taxes, she provided him with her financial information in manila envelopes. R. Doc. No. 276, at 114:24–115:5 (specifically identifying Government Exhibit 246 as the envelope that contained her financial information for tax year 2014).

[43] R. Doc. No. 283-1, at 13.

[44] R. Doc. No. 276, at 147:15–148:6.

[45] *Id.* at 148:4–10.

the 2012 return, he knew that he should not have been preparing her returns with the head of household status, but that he nevertheless did not change her filing status to married filing separately in subsequent years.[46] The government did not question Timothy about whether he discussed Burdett's filing status with her, and Timothy did not testify that he told her that claiming the head of household status was unlawful.

At trial, the government elicited testimony from both Timothy and Special Agent Timothy Moore that a person is only eligible to file as head of household if they are not married and have a dependent.[47] Though generally true, that is not entirely accurate. A person who is legally married may file as head of household if they live separately from their spouse for the last six months of the tax year; alternatively, a person who was once legally married may use the head of household filing status if they are legally separated from their spouse under a decree of divorce or separate maintenance at the end of the tax year.[48] Under either of these circumstances, the taxpayer must also have a dependent who lives with the taxpayer for more than half

---

[46] R. Doc. No. 277, at 50:8–51:9.

[47] R. Doc. No. 293 (Moore Transcript), at 59:2–3 ("The head of household filing status is used by individuals that are not married and that would have a dependent."); R. Doc. No. 276, at 108:2–:5 (Q: "Tell the jury, if people are, in fact, married, is there a legitimate way to file separate tax returns?" A: "If you are married, you can only file married filing separately or married filing jointly.").

[48] IRS guidance for all four relevant tax years provides the same eligibility requirements. Internal Revenue Serv., *1040 Instructions 2014*, https://www.irs.gov/pub/irs-prior/i1040gi--2014.pdf, at 13–14; Internal Revenue Serv., *1040 Instructions 2015*, https://www.irs.gov/pub/irs-prior/i1040gi--2015.pdf, at 14–15; Internal Revenue Serv., *1040 Instructions 2016*, https://www.irs.gov/pub/irs-prior/i1040gi--2016.pdf, at 14–15; Internal Revenue Serv., *1040 Instructions 2017*, https://www.irs.gov/pub/irs-prior/i1040gi--2017.pdf, at 14–15.

the year and pay over half the annual cost of keeping up their home.[49] Therefore, if Burdett was either (1) living separately from her husband for the last six months of any charged tax year or (2) legally separated from her husband under a decree of divorce or separate maintenance at the end of any charged tax year, the head of household filing status would be legally available to her for that year so long as she met the requirements regarding dependents and costs of maintaining her home.

Burdett contends that the government did not prove that the head of household filing status was false for any of the charged years, because it did not establish that Burdett and her husband, Troy Waguespack ("Waguespack") were not legally separated at the end of any charged tax year, that they did not live separately during the last sixth months of any tax year, or that Burdett did not meet the requirements for support of dependents and costs of maintaining a home.

The government provided evidence in the form of a 2010 marriage license that Burdett and her husband, Waguespack, were married.[50] The government did not elicit specific testimony or introduce any evidence regarding whether Burdett and Waguespack were ever legally separated or whether they lived together during the last six months of the charged tax years. Burdett and Waguespack used different

---

[49] Internal Revenue Serv., *1040 Instructions 2014*, https://www.irs.gov/pub/irs-prior/i1040gi--2014.pdf, at 13; Internal Revenue Serv., *1040 Instructions 2015*, https://www.irs.gov/pub/irs-prior/i1040gi--2015.pdf, at 14; Internal Revenue Serv., *1040 Instructions 2016*, https://www.irs.gov/pub/irs-prior/i1040gi--2016.pdf, at 14; Internal Revenue Serv., *1040 Instructions 2017*, https://www.irs.gov/pub/irs-prior/i1040gi--2017.pdf, at 14.

[50] Gov't Ex. 6.

addresses on their tax returns during all charged years, with Burdett listing a Hooper Drive address and Waguespack listing a Loyola Drive address.[51]

The government argues that, because defense counsel referenced Burdett's marriage during opening and closing statements, Burdett is "arguably judicially estop[ped]" from now objecting to the government's evidence regarding her marital status.[52] Burdett responds that these references were "broad," noting that Burdett and Waguespack were married four years before the first charged tax year and were living together at the time of trial.[53] The Court agrees that these statements, in which defense counsel stated that Burdett and Waguespack "lived at both places"[54] and asked the jury to "send her home to her husband"[55] do not prevent Burdett from raising this sufficiency challenge, as neither statement conceded that the government

---

[51] Gov't Ex. 50, at 2 (2014 Burdett return); Gov't Ex. 71, at 2 (2014 Waguespack return); Gov't Ex. 52, at 2 (2015 Burdett return); Gov't Ex. 73, at 2 (2015 Waguespack return); Gov't Ex. 54, at 2 (2016 Burdett return); Gov't Ex. 75, at 2 (2016 Waguespack return); Gov't Ex. 56, at 2 (2017 Burdett return); Gov't Ex. 77, at 2 (2017 Waguespack return).

[52] R. Doc. No. 295, at 9. The government cites two cases in support of this proposition, neither of which are compelling. In the first, *United States v. Hawkins*, the defendant argued that the evidence was insufficient to support his conviction in part because an in-court identification was "uncertain." 658 F.2d 279, 288 (5th Cir. 1981). The Court rejected this challenge, noting that the witness who identified the defendant described him as having a limp, and that, "[i]n closing argument, [the defendant's] attorney conceded that [the defendant] had a limp." In the second case, *United States v. Rusan*, defense counsel explicitly conceded that the government had met its burden of proving the elements of an offense. 460 F.3d 989, 993 (8th Cir. 2006). The Eighth Circuit therefore questioned whether examining the merits of the defendant's insufficiency challenge was necessary, but proceeded to the merits anyway. *Id.*

[53] R. Doc. No. 299, at 16.

[54] R. Doc. No. 290 (defense counsel opening statement), at 8:19–:20.

[55] R. Doc. No. 281 (defense counsel closing arguments), at 33:25.

had carried its burden of proof on the head of household theory, nor even addressed what Burdett's and Waguespack's living arrangements were during the charged tax years.

The government argues that there is sufficient evidence to support its head of household theory, pointing to evidence indicating that Burdett and Waguespack were neither separated nor living apart in the relevant time periods. Evidence at trial indicated that the Hooper and Loyola Drive addresses were for adjacent properties, and that the Loyola Drive property belonged to Burdett's mother. John Bowker, Burdett's legal assistant in 2010 and between 2015 and 2019,[56] testified that he visited Burdett and Waguespack at the Hooper Drive address and that they appeared to live there together.[57] Burdett's 2018 tax return, which was filed jointly with Waguespack, listed the Hooper Drive address, as did their amended 2012 returns.[58] Additionally, Waguespack's employer sent his W-2s to the Hooper Drive address for tax years 2015 through 2017.[59]

The government bears the burden of presenting sufficient evidence allowing the jury to conclude beyond a reasonable doubt that the defendant's conduct met each element of the crime charged. *Vargas*, 6 F.4th at 622. The government failed to carry

---

[56] R. Doc. No. 294 (Bowker Transcript), at 5:5–:10 (A: "I worked for the law firm on two separate occasions, once right out of college in 2010, and then I came back to the firm in 2015." Q: " . . . How long did you work there in 2010?" A: "It was quick. I think six months or so."); 8:16–:18 (indicating that he also worked for the law firm from 2015 to 2019).

[57] *Id.* at 29:18–30:2.

[58] Gov't Ex. 58, at 2 (2018 joint return); Gov't Ex. 67, at 2 (amended 2012 Waguespack return).

[59] Gov't Ex. 555, at 15; Gov't Ex. 556, at 24; Gov't Ex. 557, at 21.

that burden with respect to this theory. The fact that Waguespack's 2012 (as amended) and 2018 tax returns used the Hooper Drive address do little to show that he lived there with Burdett in 2014, 2015, 2016, or 2017, or that they were never legally separated during those years.

Bowker's testimony is also insufficient. Bowker did not live in New Orleans or work for Burdett in 2014, so his testimony cannot establish the relevant facts during that year.[60] For the remaining years, Bowker's testimony lacked specificity. Bowker testified that Burdett and Waguespack got married in 2010.[61] The government then asked Bowker whether "from that point forward, as far as you know, they were married?" to which Bowker responded "Correct."[62] The government did not elicit detail, and Bowker did not testify, as to why he believed Burdett and Waguespack to be married during the relevant period. Moreover, Bowker failed to testify as to whether he knew Burdett was legally separated or living apart from her husband during the relevant time periods.

As stated, Bowker testified that he visited Burdett and Waguespack at the Hooper Drive property and that he believed they lived there together.[63] This testimony likewise lacked detail as to when or how often he visited them, or why he believed they lived there together. The government asked if he "ever" went to their

---

[60] R. Doc. No. 294, at 8:16–:18; *see supra* note 56.

[61] R. Doc. No. 294, at 29:3–14.

[62] *Id.* at 29:15–:17.

[63] *Id.* at 29:17–30:2.

house, and whether "as far as [he] knew, they both lived there together."[64] To both of these questions, he simply responded in the affirmative, with no further detail.[65]

The government could have called witnesses to testify as to whether Burdett and Waguespack lived together or whether they were ever legally separated during the charged tax years, or whether and when Burdett's dependents lived with her. *See United States v. Morris*, 723 F.3d 934, 939 (8th Cir. 2013) (affirming conviction for falsely claiming the head of household filing status where "witnesses testified that [defendant and her husband] were never separated and never lived apart during the relevant period"). The government served trial subpoenas on Burdett's brother, mother, and adult stepdaughter, who presumably could have testified as to Burdett and Waguespack's marital status and living arrangements.[66] Nevertheless, the government did not call any of these witnesses to testify as to facts establishing that Burdett was ineligible for the head of household filing status.

Simply put, the government neither provided, nor argued, evidence reflecting Burdett's marital status and living arrangements during each of the relevant time periods. Furthermore, the government **never** told the jury—or elicited any evidence—that Burdett lacked a qualifying dependent or did not pay half the cost of keeping up her home.

The Court is unable to grant Burdett's motion for judgment of acquittal based solely on the government's unexplained failure with regard to the head of household

---

[64] *Id.*

[65] *Id.*

[66] R. Doc. No. 194, at 7, 9, 53.

theory.[67] Notwithstanding the failure of the government with respect to the head of household theory, however, the Court finds that evidence was sufficient to support the Schedule C theory.

### d. Schedule C Theory (All Counts)

The government's alternate theory was that Burdett claimed personal expenses as business expenses, inflated actual business expenses, and fabricated business expenses on her Schedule C forms for the charged years, thereby reducing her tax liability. Regarding the Schedule C theory, Burdett challenges the sufficiency of the evidence as to her knowledge, willfulness, and lack of good faith.

### i. Knowledge and Willfulness

Burdett argues that the government failed to prove knowledge and willfulness as to its Schedule C theory. To prove willfulness, "the government must show that: (1) the law imposed a duty on the defendant; (2) the defendant knew of that duty; and (3) the defendant voluntarily and intentionally violated that duty." *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009) (citing *Cheek v. United States*, 498 U.S. 192, 201 (1991); *United States v. Simkanin*, 420 F.3d 397, 404 (5th Cir. 2005)). The jury was instructed in accord with that standard, and it was further instructed that

---

[67] Burdett also challenges the government's evidence of her knowledge, willfulness, and lack of good faith as to the head of household theory. Because the Court finds that the government failed to provide sufficient evidence to support that Burdett was ineligible for the head of household filing status, the Court does not address these arguments. Challenges to the evidence of Burdett's knowledge, willfulness, and lack of good faith are addressed as to the Schedule C theory below.

willfulness "means the voluntary, intentional violation of a known legal duty" and that negligence or mistake does not constitute willfulness.[68]   The mere signing of a tax return, even if it contains false statements, does not establish that the defendant acted willfully for purposes of a § 7206(1) conviction. Instead, the government must prove that the defendant "did not believe that the return was true and correct when [she] signed it" and that she "signed it willfully and with specific intent to violate the law." *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014) (citing *United States v. Bishop*, 264 F.3d 535, 552 (5th Cir. 2001)).

In the context of § 7206(1) convictions, the Fifth Circuit has stated that "evidence of a consistent pattern of under[-]reporting large amounts of income will support the necessary inference of willfulness." *United States v. Stokes*, 998 F.2d 279, 281 (5th Cir. 1993); *accord United States v. Boulyaphonh*, 860 F. App'x 945, 947 (5th Cir. 2021). The Fifth Circuit has held, in the context of tax evasion convictions, that "evidence of willfulness is ordinarily circumstantial" and may include "failure to report a substantial amount of income, a consistent pattern of under[-]reporting large amounts of income, [or] the spending of large amounts of cash that cannot be reconciled with the amount of reported income." *United States v. Kellar*, 394 F. App'x 158, 165 (5th Cir. 2010) (quoting *United States v. Chesson*, 933 F.2d 298, 304 (5th Cir. 1991)) (quotations and alterations omitted) (affirming convictions under 26 U.S.C. §§ 7201 and 7203).

---

[68] R. Doc. No. 265-2, at 27–28.

Timothy's testimony indicated that Burdett was responsible for providing him with the paperwork necessary to complete Williams' returns as well as her own, and that Timothy communicated with Burdett about both Williams' and Burdett's taxes.[69] When discussing Williams' returns, Timothy testified that, after he prepared the returns, he would call Burdett to discuss "the bottom line" with her, and that she would sometimes reject that number and ask him to "adjust it some more."[70] On redirect, when asked about the returns he prepared "for Mr. Williams and Ms. Burdett,"[71] he again confirmed that Burdett did not always accept the "bottom-line" number that he initially provided to her.[72]

Timothy's testimony indicated that Burdett did not specifically tell him to inflate or fabricate her Schedule C expenses. In response to defense counsel's questioning, he acknowledged that he told investigators that Burdett told him that she did not know which of her expenses were deductible.[73] Timothy testified that he did not deduct all of the expenses that Burdett provided to him, indicating which expenses he selected by checking them off on the profit and loss statements she provided, which he then returned to her.[74] He also testified that she did not specifically instruct him to increase the Schedule C expenses.[75] Instead, he testified

---

[69] R. Doc. No. 276, at 47:5–:15; 58:22–:25.

[70] *Id.* at 60:22–61:1; 61:11–62:1.

[71] R. Doc. No. 277, at 135:9–:13.

[72] *Id.* at 138:14–:17.

[73] *Id.* at 27:15–28:13.

[74] *Id.* at 97:9–:14; R. Doc. No. 276, at 130:6–:15.

[75] R. Doc. No. 276, at 63:13–64:10.

that she asked if he could "go lower," which he understood to mean that Burdett wanted him to inflate the expenses, because he had done so in the past.[76] However, at one point, he also indicated that Burdett told him to use all the numbers on the profit and loss statements if needed to reduce tax liability.[77]

Timothy also testified that he provided Burdett with documents indicating the business expenses he intended to deduct on her behalf before he filed her returns.[78] He further testified that, when he handed her the prepared return, he told her to "let [him] know if she didn't like anything on the tax return, and we would adjust it before we sent it off."[79]

Burdett argues that some of the government's questions "improperly characterized Timothy's answers as if Ms. Burdett had told Timothy to increase the expenses," and she also argues that "a rational jury could not rely on the form of the government's questions as evidence that Ms. Burdett directed Timothy to falsify the Schedule Cs."[80] The Court agrees. However, Timothy also testified that, even though Burdett never specifically told him to falsify Schedule C expenses, she did instruct

---

[76] *Id.* at 64:12–:20.

[77] R. Doc. No. 277, at 132:20–:25.

[78] R. Doc. No. 276, at 130:6–:15; R. Doc. No. 277, at 132:8–:11.

[79] R. Doc. No. 276, at 134:14–:18.

[80] R. Doc. No. 283-2, at 2 (citing R. Doc. No. 276, at 62:8–:12, :17–:22) (government's questions, on direct examination of Timothy, asking "When she told you 'We need to increase the expenses,' what did you understand that to mean?" and "When you were given that direction, did you then begin pulling in personal expenses?").

him to "adjust" Williams' tax liability[81] and that she did not always accept the first estimation of tax liability that Timothy provided for either herself or Williams.[82]

The government also points to that portion of Timothy's testimony in which he agreed, in response to government questioning, that Burdett told him "to use all the numbers provided on the profit and loss if Mr. Timothy needed them to further reduce the tax liability."[83] Burdett argues that this testimony is contradicted by those portions of his testimony in which he stated that he inflated Burdett's Schedule C expenses "just to help [her] out" and that she did not specifically instruct him to do so.[84] As discussed above, however, evaluating witness credibility and contradictions in testimony is the jury's responsibility, not the court's. *See Collins*, 243 F. App'x at 58 (noting that the jury is responsible for evaluating witness credibility and conflicting evidence).

Burdett further argues that Timothy's testimony that he provided Burdett with the returns before filing them is false, and points to text messages suggesting that she picked up her returns from Timothy after he filed them.[85] Burdett implies that she never looked at the returns before they were filed, therefore negating her knowledge of their contents. First, "[t]he mere presence of some conflicting evidence in the record does not render a jury verdict improper." *Bates*, 850 F.3d at 810. Though

---

[81] R. Doc. No. 276, at 62:1.

[82] R. Doc. No. 277, at 138:14−:17.

[83] *Id.* at 132:20−:25.

[84] R. Doc. No. 299, at 13.

[85] R. Doc. No. 283-2, at 14.

the text messages referenced by Burdett do call into doubt the reliability of Timothy's testimony that he gave her the documents before filing them, the jury was entitled to credit Timothy's testimony and determine that he provided her with the returns before he filed them.

Second, "a jury may permissibly infer that a taxpayer read his return and knew its contents from the bare fact that he signed it." *United States v. Olbres*, 61 F.3d 967, 971 (1st Cir. 1995); *see also United States v. Mohney*, 949 F.2d 1397, 1407 (6th Cir. 1991) ("A taxpayer's signature on a return does not in itself prove his knowledge of the contents, but knowledge may be inferred from the signature along with the surrounding facts and circumstances, and the signature is prima facie evidence that the signer knows the contents of the return."). Burdett does not dispute that she signed the tax returns for tax years 2015, 2016, and 2017. Moreover, Burdett does not dispute that she received the completed returns for each year, with the marked-up profit and loss statements, before she engaged Timothy's services for the next tax year.

Ultimately, even accepting that the government offered no evidence to support the inference that Burdett ever specifically directed Timothy to take false deductions on her behalf, the jury could nevertheless have inferred that she knew that Timothy was taking improper deductions on her behalf and signed them anyway, with the requisite willfulness. The fact that Timothy testified that Burdett did not tell him specifically how to reduce tax liability for herself or Williams does not negate the fact that he testified that she told him to reduce it. According to Timothy, Burdett did not

ask him if it was *possible* to reduce the liability—she simply indicated whether or not "she was satisfied" with the amount he indicated would be owed.[86] In contrast, Timothy testified that, while he took similar improper deductions on Bowker's tax returns, Bowker never instructed him to adjust or reduce his liability, and Timothy did it only "[b]ecause [he] was doing it for everybody else in the law firm."[87]

It is undisputed that Burdett's returns reflected inappropriate Schedule C deductions for all four charged years.[88] Burdett deducted business expenses in the amount of $61,896 in 2014,[89] $105,106 in 2015,[90] $124,858 in 2016,[91] and $92,559 in 2017.[92] The claimed expenses—which appear on the Schedule C form titled "Profit or Loss From Business"—are questionable on their face.

For "supplies," Burdett's returns reflect deductions in the amounts of $24,849,[93] $38,664,[94] $64,876,[95] and $35,823.[96] Bowker's testimony at trial indicated that Burdett was not expected to purchase her own supplies.[97] Burdett had a small home office, but her Schedule C deductions listed $9,300 for rent for "other business

---

[86] R, Doc. No. 276, at 63:9–:10.

[87] *Id.* at 169:4–:11.

[88] R. Doc. No. 299, at 12.

[89] Gov't Ex. 50, at 15.

[90] Gov't Ex. 52, at 18.

[91] Gov't Ex. 54, at 10.

[92] Gov't Ex. 56, at 10.

[93] Gov't Ex. 50, at 15.

[94] Gov't Ex. 52, at 18.

[95] Gov't Ex. 54, at 10.

[96] Gov't Ex. 56, at 10.

[97] R. Doc. No. 294, at 20:25–21:7.

property" in 2014.[98] Testimony indicated that Burdett had no "other business property."[99] She nevertheless also deducted janitorial expenses in the amount of $3,977,[100] $3,797,[101] $2,558,[102] and $2,405[103] for each tax year respectively. Under "other expenses," Burdett deducted expenses in the amounts of $757,[104] $4,074,[105] $3,934,[106] and $1,724[107] for "uniforms/upkeep." In 2016 and 2017, Burdett also deducted $1,745[108] and $2,694[109] for unidentified "miscellaneous expenses."

By claiming false business expenses on her Schedule C, Burdett's reported income was significantly reduced. In contrast to the claimed expenses, detailed above, Burdett's adjusted gross income for the charged tax years was reported as $20,409,[110] $23,824,[111] $19,046,[112] and $21,876[113] respectively. IRS Revenue Agent David Carrone, who reviewed Burdett's returns, testified that Burdett's reported income in

---

[98] During a sidebar, the parties agreed to stipulate that Burdett's home office was 100 square feet. R. Doc. No. 310 (Sidebar Transcript), at 4:4; 7:11–14; Gov't Ex. 50, at 15.
[99] R. Doc. No. 293, at 62:7–:9.
[100] Gov't Ex. 50, at 17.
[101] Gov't Ex. 52, at 20.
[102] Gov't Ex. 54, at 12.
[103] Gov't Ex. 56, at 12.
[104] Gov't Ex. 50, at 17.
[105] Gov't Ex. 52, at 20.
[106] Gov't Ex. 54, at 12.
[107] Gov't Ex. 56, at 12.
[108] Gov't Ex. 54, at 12.
[109] Gov't Ex. 56, at 12.
[110] Gov't Ex. 50, at 2.
[111] Gov't Ex. 52, at 2.
[112] Gov't Ex. 54, at 2.
[113] Gov't Ex. 56, at 2.

2014 was only about $900 above the federal poverty line.[114] Burdett's reported income resulted in her receiving tax refunds for all four charged years.[115]

Faced with this evidence, the jury could reasonably have concluded, as Burdett contends, that Burdett was simply reckless or negligent with regard to her taxes. It could also have reasonably concluded, however, that Burdett knew that Timothy was taking improper deductions on her behalf and that she continued to use his services in order to reduce her tax liability. Timothy was Burdett's tax preparer between 2010 and 2017.[116] Her tax returns reflected "a consistent pattern" of very dubious deductions for at least four years in a row. *Stokes*, 998 F.2d at 281; *Boulyaphonh*, 860 F. App'x at 947. She regularly communicated with Timothy about her taxes and those of her family and colleagues, and she was responsible for dropping off and picking up tax-related materials from Timothy.[117] Moreover, the fact that she asked Timothy to amend her 2012 tax returns to reflect a married filing separately filing status supports an inference that she knew there was some falsity in her tax returns.[118] Though this circumstantial evidence by no means requires an inference of willfulness, the jury was entitled to reject Burdett's explanations of her behavior and infer that she acted willfully. *Stokes*, 998 F.2d at 281.

---

[114] R. Doc. No. 289 (Carrone Transcript), at 25:3–:11.

[115] Gov't Exs. 50, at 9, 18; 52, at 12, 21; 54, at 13; 56, at 15.

[116] R. Doc. No. 276, at 47:5–:7; 58:16–:18.

[117] *Id.* at 134:9–:13.

[118] *See supra* notes 44–46.

### ii. Good Faith

"To avail himself of the defense [of good faith reliance on a tax preparer], a defendant must demonstrate that he provided full information to the preparer and then filed the return without having reason to believe it was incorrect." *United States v. Wilson*, 887 F.2d 69, 73 (5th Cir. 1989). The Court instructed the jury that "reliance on a qualified tax preparer is a defense to a charge of willfully making false statements on a tax return" and that, if Burdett relied on Timothy, "provided full and complete information to him," and in good faith without knowing that the returns contained false statements, adopted, signed, and filed the tax returns, it must find her not guilty.[119] The jury instructions further stated that if the jury found "that the defendant did not provide full and complete information to Henry Timothy, or that the defendant knew that the return as prepared by [him] contained false statements, then" it could find Burdett guilty even though she did not prepare the returns herself.[120]

Burdett argues that the government failed to show that she did not in good faith rely on Timothy's services, focusing primarily on the fact that Timothy untruthfully held himself out as a CPA.[121] Though Timothy was not a certified CPA, he testified that he held himself out as a CPA by sometimes placing "CPA" next to his name on the invoices he sent to Burdett.[122] Financial planner Kevin Conley testified

---

[119] R. Doc. No. 265-2, at 44.

[120] *Id.* at 45.

[121] *Id.* at 19–20.

[122] R. Doc. No. 276, at 71:25–72:25.

that he met with Burdett in 2018, reviewed her tax returns, informed Burdett that Timothy was not a CPA, and advised her to go to someone else for tax services in the future.[123] In tax year 2018, Burdett hired an accounting firm to handle her taxes; that firm filed her returns with the married filing jointly status.[124] Burdett argues that this timeline helps establish that she relied in good faith on Timothy's tax preparation, because she sought a new tax preparer before she was under government investigation.[125]

Burdett emphasizes that she provided Timothy with financial records that, though accurate, commingled business and personal expenses.[126] Timothy testified that Burdett told him that she was not an accountant, and that there were likely expenses on the profit and loss statements she provided to him that should not have been there.[127] He further testified that he would indicate which expenses he listed on the Schedule C by checking them off on the profit and loss statements that Burdett gave him, and that he would then return the documents to her for her to review.[128] He agreed that those checkmarks likely made it appear to Burdett that the deductions he had taken were legitimate.[129] The government again counters with the argument that the Schedule C deductions were facially illegitimate, and that

---

[123] R. Doc. No. 311 (Conley Transcript), at 6:15–8:1.

[124] Gov't Ex. 58, at 2.

[125] R. Doc. No. 283-2, at 1.

[126] R. Doc. No. 283-1, at 20.

[127] R. Doc. No. 277, at 28:4–:16, 99:15–:17.

[128] R. Doc. No. 276, at 130:3–:15.

[129] *Id.* at 223:13–:18.

Burdett's argument is merely a "competing narrative" that the jury was entitled to reject.[130] The evidence, the government argues, is equally susceptible to the interpretation that Burdett knew that Timothy was falsely reducing her tax liability, and that she repeatedly chose to use his services anyway.

The Court largely agrees with the government. Timothy's testimony, discussed above, could support a conclusion that Burdett provided complete and accurate profit and loss statements to Timothy, and that she relied in good faith on his judgment regarding which expenses to deduct, which he indicated via his checkmarks. However, Timothy's testimony also indicated that Burdett told him that there were likely expenses on the profit and loss statements that should *not* have been there. [131] The checked-off profit and loss statements indicated that Timothy had deducted expenses that clearly were not business related. In 2014, he placed checkmarks next to $3,977.00 in cleaning expenses, $8,750.76 for "office supplies," and $23,849.47 for "credit card payment," among other expenses.[132] As discussed above, Burdett's only business property was a small home office, unlikely to require nearly $4,000 worth of cleaning in a year. And Burdett's own credit card records indicated that, in 2014, the largest categories of transactions for which she used her credit card were travel and entertainment (over $16,000), shopping (over $8,000), and restaurants (over $4,000).[133] Additionally, as discussed above, her 2014 Schedule C stated expenses

---

[130] R. Doc. No. 295, at 18.

[131] R. Doc. No. 277, at 28:4–:16.

[132] Gov't Ex. 247, at 1.

[133] Gov't Ex. 250, at 1.

over $9,000 for "other business property," when Burdett had no other business property, and there was no entry on her 2014 profit and loss statement for such an expense.[134] A jury could have reasonably concluded, when presented with evidence of these facially dubious deductions, that Burdett knew that her tax returns were false and signed them anyway.

This pattern continued in later tax years. On the profit and loss statement for 2015, Timothy placed checkmarks next to $3,797.00 for "cleaning," $3,147.09 for "clothing," and $6,272.89 for "office supplies," among other expenses.[135] In 2016, he checked off $2,558.00 in cleaning expenses, $15,285.20 for "office supplies," and $51,228.08 for "credit card payment," among other expenses.[136] And in 2017, he checked off $2,405.00 for cleaning expenses, $32,637.83 for "credit card payment," $6,479.81 for "office supplies," and $1,711.59 for "clothing," among other expenses.[137] Additionally, the profit and loss detail statements for 2014, 2015, and 2016, which Burdett also provided to Timothy, indicate that the "office supplies" entries on the profit and loss statements included transactions at grocery stores, Wal-Mart, Barnes and Noble, Sams, iTunes, Hobby Lobby, Michaels, Target, and other retailers.[138]

The Court finds that the government offered sufficient evidence to allow a reasonable jury to reject the good faith defense. Though the evidence would have

---

[134] *See supra* notes 98–99; Gov't Ex. 247, at 1.

[135] Gov't Ex. 252, at 1–2.

[136] Gov't Ex 256, at 1–2.

[137] Gov't Ex. 261, at 1–2.

[138] Gov't Exs. 248, at 1–3; 253, at 29–30; 258, at 29–33. The detail statement for tax year 2017, Gov't Ex. 262, at 33–35, does not indicate a retailer for each transaction.

supported Burdett's contention that she in good faith relied on Timothy's services, the financial records that she provided to Timothy, and the marked-up documents that he returned to her, also support an inference that she knew that he was improperly deducting personal expenses on her behalf. According to Timothy's testimony, she knew that her profit and loss statements contained expenses that were likely not deductible.[139] The documents he returned to her indicated dubious deductions year after year. Viewing all evidence in the light most favorable to the prosecution, as the Court must, the jury's rejection of Burdett's good faith defense was not unsupported. *Beacham*, 774 F.3d at 272.

Burdett's interpretation of the evidence, again, was available to the jury but apparently rejected. On a Rule 29 review, the Court is "highly deferential" to the jury's verdict, *Isgar*, 739 F.3d at 835, and "any conflict in the evidence must be resolved in favor of the jury's verdict." *Bates*, 850 F.3d at 810. It is beyond this Court's authority to second guess the jury's determination when the government provided sufficient evidence to support it.

### e. Burdett's Additional Arguments

Burdett makes several additional arguments in her motion. The Court addresses each in turn.

---

[139] R. Doc. No. 277, at 28:4–:16.

### i. The Government's "Failure to Amend Theory"

Burdett argues that the government "repeatedly attempted to elicit testimony that Ms. Burdett did not amend her tax returns to argue that failure to amend was evidence that at some point Ms. Burdett reviewed her returns and knew of their contents," and that this "theory asked the jury to convict for recklessness or negligence."[140] Burdett does not point to trial testimony in support of this assertion.

The jury was explicitly instructed that they could not convict Burdett based on negligence or recklessness.[141] Further, the jury did not need to rely on any "failure to amend theory" to find that the consistent pattern of false and inflated Schedule C expenses on Burdett's tax returns supported an inference of willfulness. Regardless of any attempt to elicit such testimony to show that Burdett knew of the content of her returns, other evidence was sufficient to reject a Rule 29 argument.

### ii. The Government's Motive or Lifestyle Evidence

Burdett also argues that certain government evidence—summaries of travel expenses and four checks for "Luxury Outdoor Design"—was "misleading."[142] As to the travel expenses, Burdett emphasizes that the financial analyst who prepared the charts did not distinguish between Burdett's travel and her husband's business travel.[143] As to the checks, Burdett argues that those expenditures were funded by "a

---

[140] R. Doc. No. 283-2, at 15.

[141] R. Doc. No. 265-2, at 27.

[142] R. Doc. No. 283-2, at 25.

[143] *Id.*

deposit into the joint account" maintained by Burdett and Waguespack, not by IRS payments.[144] Burdett does not contend, and the Court does not find, that this evidence, though not clearly presented, was central to the jury's decision, particularly when placed in the context of the documentation presented by the government, as discussed in this opinion.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for judgment of acquittal is **DENIED**.

New Orleans, Louisiana, November 14, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[144] *Id.* at 27.